CHRISTINA S. BUXTON, Appellant, v. CATHERINA M. A. KROEGER et al.

In Banc, April 13, 1909.

1. INTERPRETATION OF DEED: Vested or Contingent Remainder: Theory at Trial: Perpetuity on Appeal. Where the case was tried on the theory, on one side, that the deed, whose rightful interpretation is the basis of the suit, created a vested remainder in the children, and on the other, that it created a contingent remainder, and the case was first submitted to this court upon that theory and the implied admission that the deed was a valid instrument, the appellant will not be permitted to shift his position later and seek to have the deed adjudged invalid as being in conflict with the rule against perpetuities. Even if that issue might properly have been lodged in the case, but was not, the suit being in ejectment, it can be determined in a subsequent suit.

2. ———: ———: **Tests.** If the remainderman has a present capacity to convey an absolute title to the remainder it is a vested remainder; otherwise, it is contingent. Where persons who are to take are uncertain, or the remainder is limited to a person not ascertained by the terms of the instrument, it is a contingent remainder. Likewise, if the remainder is limited to children living at the death of the life tenant, the remainder is contingent till the death of the life tenant.

3. ———: ———: **Life Estate: In Children Then Living.** The deed conveyed the title to a trustee to be held by him for the sole and separate use of a wife during her life, with power in her to direct the sale or mortgage of the property, and if her husband was living at her death for his sole and separate use for the remainder of his life, with power in him to direct a sale or mortgage, and thereafter the trustee was to collect the rents for their children until ten years after the youngest of them should have attained lawful age, and then "make final settlement with each of said children," and "thereupon the trust shall cease and be determined, and the title to said real estate and every part and portion thereof, not disposed of as hereinabove provided, shall, without any act to be done or performed by said trustee, pass to and become fully vested in fee simple in said children then living, and in the heirs at law of such of them as may then be dead." *Held*, that the deed created a contingent remainder. If it had said that at the death of the mother the title should vest in the children then living, it would have been contingent; and the contingency is no less uncertain, because it says it shall vest in the children living ten years after the youngest reaches his lawful age.

4. ———: ———: ———: ———: **Ignoring Clause.** The clause fixing the time when the title should vest at ten years after the youngest child attained to lawful age, and expressly providing that at such time without any act to be done by the trustee the fee simple title should pass and become vested in the children then living, cannot be ignored. If the grantors intended to create a vested remainder in the children, the clause was unnecessary; but if the grantors meant to designate a time when the title should pass, and the persons to whom, the clause was a very vital one, and to ignore it would be to do violence to the terms employed and the manifest intention of the grantors.

5. ———: ———: **Trust Estate: Equitable Owners of Title.** Where the trustee's right to collect the rents and disburse them emanates from the deed, and the children were entitled to them after the terminating of the life estates only because the deed

219 Sup.—15

*directed the trustee to pay the rents over to them, the children were not equitable owners of the land during the trusteeship.*

6. ——: ——: ——: **Provision as to Use.** The deed conveyed the property to a trustee for the separate use of the wife and after her death to the separate use of her husband, and provided that, after their death, the trustee should hold the real estate to the use, benefit and behoof of the children born or to be born of the marriage, the children living at the time of the deed's execution being named. No power was given either to the trustee or children to dispose of any of the property after the death of the life tenants, and the use was to be for the children alone and not for them and their heirs and assigns. *Held*, that the manifest intention of the grantors should be considered, and that was to hold the real estate for the children alone, and the provisions as to use did not create a vested remainder in the children.

7. ——: ——: **Intervening Estate: Title Not Vested.** Under section 4596, Revised Statutes 1899, it is not necessary that the title vest or that any estate be created between the end of the life estate and the vesting of the estate in remainder. So that it is of no controlling force in determining whether the deed created a vested or contingent remainder that it created a life estate in the wife and husband and then provided that the title should not pass to the children then living until ten years after the youngest of them attained to lawful age. An estate may be created to commence in the future without any intervening estate to support it. But in this case the title was vested in the trustee.

8. ——: ——: **In Heirs at Law: Purchasers.** The deed provided that ten years after the youngest child should attain to lawful age the title should "pass to and become fully vested in fee simple in said children then living and in the heirs at law of such of said children as may then be dead." *Held*, that the words "heirs at law of such of said children as may then be dead" do not mean that the heirs at law were to take by descent, but they take as purchasers by way of substitution for deceased children.

By VALLIANT, C. J., IN A DISSENTING OPINION, IN WHICH GANTT AND WOODSON, JJ., CONCUR.

1. **REMAINDERS: Contingent: Uncertainty as to Share: Class.** The fact that the share the remaindermen may take, when the time specified for its enjoyment comes, may depend on a contingency, does not constitute the remainder a contingent one. The remainder may be given to a class liable to be increased

Buxton v. Kroeger.

in number. The fact that the grant was to children born and to be born does not operate against the proposition that it was a vested remainder.

2. ———: ———: **Effect of Power of Disposal.** Nor does the fact that the body of the property is liable to be diminished by the life tenant by the exercise of the power of disposal vested in him, affect the character of the remainder.

3. ———: ———: ———: **Express Words Granting Remainder.** Where express words are used limiting the grant to the first taker to a life estate, with power of disposition by sale or mortgage or otherwise, and granting the remainder in fee to others, the remainder passes burdened with the power.

4. ———: ———: **Uncertainty as to Enjoyment.** No uncertainty of enjoyment will render the remainder contingent. The contingent or vested character of the remainder is only determined by the uncertainty which attends the vesting of the right to the estate. It is an essential element to an estate of vested remainder that there be a present right of future enjoyment, but if that element is present the time appointed for the enjoyment to begin may depend on a contingency, and the degree of enjoyment may be affected by a contingency that would burden the property, yet the estate would vest *in praesenti*.

5. ———: ———: **Uncertainty as to Persons: In Children Then Living.** Where the contingency named is such as to render it uncertain what person or persons will take the remainder when the time comes for its enjoyment, then it is a contingent remainder. If in this case the deed had said that the remainder should go to those children of the grantor living at the time of the death of their mother, the right of any child to have a part in it would depend upon his or her surviving the mother, and if that were the fact the remainder would be contingent, but that is not the fact, although there follows a clause, after directions as to trusteeship, to the effect that the title shall then pass to and vest in the children then living and the heirs at law of such as may be dead, for that clause does not abrogate the rest of the deed distinctly vesting the equitable title in the children.

6. ———: ———: ———: **Legal and Equitable Title: Trusteeship: Clause Terminating Trust.** The grantor of the deed by its granting clause conveyed to a trustee, his heirs and assigns, and his successors in trust, forever, certain lands. He then provided that the trustee should hold the lands for the sole and separate use and benefit of grantor's wife during her life, with power in her to direct its sale or mortgage, or any part of it; upon her death the trustee should hold the property, subject to power of disposal, for the grantor's sole and separate use, during his life, if he survived the wife. The deed then

provided that after the death of the life tenants the trustee "shall hold the real estate above described, or so much thereof as shall not be disposed of as above provided, to the use, benefit and behoof, share and share alike, of the children born or to be born of" said grantor and his wife (naming the "children now living"—no others were thereafter born), and the trustee was to rent the property, out of the rents make repairs and pay taxes, and the balance he was to divide "equally between the said children," and "at the expiration of ten years from and after the youngest of said children shall have attained lawful age, the said trustee shall make a final settlement with each of said children, paying over to each of them then living, and to the heirs at law of such of them as may have departed this life, their respective equal shares as aforesaid of said rents and profits, and thereupon this trust shall cease and be determined, and the title to said real estate and every part and portion thereof, not disposed of as hereinbefore provided, shall without any act to be done or performed by said trustee, pass to and become fully vested in fee simple in said children then living and in the heirs at law of such of said children as may then be dead, to be by them held as tenants in common." The grantor died in 1879, the wife in 1893, the youngest child reached lawful age in 1897, and one of the sons named married and died in 1892, leaving no child, but a wife, to whom he devised his share in the property, and she sues on the theory that the will created a vested remainder in the children. *Held,* first, that by the granting clause, the grantor parted with the whole estate, and created a legal and an equitable estate, vesting the legal estate in the trustee, and the equitable estate in the wife for life and in the children in fee; *second,* though the deed provided that, in the interval between the wife's death (in 1893) and the end of the ten-year period (in 1897), the trustee should collect the rents and divide them equally among the children, in doing so he did not act as a mere agent, but as trustee holding the legal title in trust, and the persons to whom he was to pay the money were not mere donees, but equitable owners of the land, whose proprietary use of the land began immediately upon the termination of their mother's life estate; *third,* the language used by the grantor, authorizing the trustee to hold the real estate for the use and benefit of his "children born and to be born," shows that he understood that he had already given the title to the children, and the intervention of the trustee was only to put restrictions on their use and enjoyment of the estate; *fourth,* the words that follow as to the passing of the estate into the hands of the children living at the end of the ten-year period, ought not to be given controlling significance in determining when the title vested, for the title which the grantor's children held up to that time would have passed from

an equitable to a legal estate without those words, and their real significance was to pass the enjoyment of the property to the children without the necessity of a deed from the trustee, or any obstruction or interference from him; *fifth*, but for the active duties the trustee was given to perform, the legal and equitable title would have merged in the children at the death of the life tenant, but the active trust, separating the life estate and remainder, did not make the remainder contingent; and, *sixth*, the deed created an equitable vested remainder in the grantor's children, vesting the equitable title in them at the time of its execution.

BY WOODSON, J., IN SEPARATE DISSENTING OPINION.

1.  **PERPETUITY: Deed to Unborn Child of Unborn Child.** The deed in first conveying the estate to the trustee to be held by him for the sole use of the wife during her life, and then by him for the use of the grantor's and his wife's children "born or to be born," and then providing that ten years after the youngest should attain to lawful age the title should pass to the children then living and "the heirs at law of such of said children as may then be dead," provided that the unborn children of unborn children of the grantor should take the title, and was therefore in conflict with the Statute of Perpetuities, and void for all purposes, and the grantor died the owner of the land.

2.  ————: ————: **No Child Born.** If it is possible for an unborn child of an unborn child to take under the deed, it is void. The fact that no child was born to the grantors after the deed was made does not affect its validity or invalidity.

3.  ————: **Not Raised at Trial.** Although the validity of the deed, whose rightful interpretation is the purpose of the suit, is conceded by both sides, and was not questioned either in the trial court or in this court until after the cause was submitted, that fact is wholly immaterial if the vice of the deed appears on its face. If it is void as creating a perpetuity, it should not be held valid as creating either a contingent or a vested remainder.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neil Ryan*, Judge.

AFFIRMED.

*Rassieur, Schnurmacher & Rassieur* for appel-
lant.

Under the deed in question, the children named in
the deed acquired a vested remainder in the property
thereby conveyed and upon the death of John Henry
Lauman (one of the children so named) his interest,
under his will, passed to his widow, the plaintiff, and
she is therefore entitled to an undivided one-fourth
interest in said property. (1) Where the intention is
doubtful, the remainder will be construed as vested
rather than contingent, since the courts favor the vest-
ing of remainders. (2) The word "heirs" will be
construed as a word of limitation and not as a word
of purchase, unless the instrument shows clearly that
it is used to designate a new class of beneficiaries.
(3) An estate in fee, created by previous clauses of
the instrument, will not be cut down or limited by a
subsequent clause, unless it is as clear and decisive
as the language of the clause which devises or grants
the remainder. (4) A grant to persons *in esse,* unless
the language expressly postpones its operation, con-
fers an immediately vested interest. (5) Where words
of futurity are introduced into a gift, they will be
held to refer to the time of enjoyment, rather than
to the vesting of the title. (6) Directions to the trus-
tee to make settlement at the end of the trust and
pay over, or to convey, or other expressions as to the
passing of the title, will not prevent an immediate
vesting in persons *in esse,* unless the subsequent lan-
guage clearly shows that the estate granted was con-
ditional and that a substitution of beneficiaries was
intended. Waddell v. Waddell, 99 Mo. 338; Chew v.
Keller, 100 Mo. 362; Byrne v. France, 131 Mo. 639;
Tindall v. Tindall, 167 Mo. 218; Roberts v. Crume,
173 Mo. 572; Gannon v. Albright, 183 Mo. 238; Collier's
Will, 40 Mo. 287; Tiedeman on Real Property, sec.
401. (7) Where the remainder is given to children

born and to be born, those in being have a vested remainder, the individual shares being liable to diminution, if others, belonging to the class, should be born thereafter. Gates v. Seibert, 157 Mo. 254.

*Kehr & Tittmann* and *Klein & Hough* for respondents.

(1) As the title was not to vest in the children until ten years after the youngest of them became of age, and then only in such of them as were then alive, the remainder was necessarily contingent. Tiedeman on Real Property (2 Ed.), secs. 397 and 403; also 396; Emison v. Whittlesey, 55 Mo. 254; DeLassus v. Gatewood, 71 Mo. 381; Rodney v. Landau, 104 Mo. 257; Emerson v. Hughes, 110 Mo. 630; Maguire v. Moore, 108 Mo. 267; Owen v. Eaton, 56 Mo. App. 563; Taylor v. Adams, 93 Mo. App. 277; Aubuchon v. Bender, 44 Mo. 560; Olney v. Hull, 21 Pick. 311; Thompson v. Ludington, 104 Mass. 193; Denny v. Kettell, 135 Mass. 138; Colby v. Duncan, 139 Mass. 398; Hunt v. Hall, 37 Me. 363; Buck v. Paine, 75 Me. 582; Tillman v. Davis, 95 N. Y. 24; Whitesides v. Cooper, 115 N. C. 570; White's Tr. v. White, 86 Ky. 602; Starr v. Willoughby, 218 Ill. 485; Schaefer v. Schaefer, 54 W. Va. 681; 1 Preston on Estates, p. 74, also p. 36; 2 Washburn on Real Prop. (6 Ed.), sec. 1575, also sec. 1526. (2) Heirs at law are those who take by descent if the ancestor dies intestate—those who take by right of blood. It includes parents, brothers, sisters, etc. A devisee is not an heir at law. 1 Bouvier's Law Dic. (Rawle's Revision); Waddell v. Waddell, 99 Mo. 338; Tillman v. Davis, 95 N. Y. 17; State v. Ingle, 1 Zab. (N. J.) 367; Wiesner v. Zann, 39 Wis. 200.

FOX, J.—This cause is now pending in this court upon appeal by the plaintiff from a judgment of the circuit court of the city of St. Louis.

There is no dispute about the facts developed upon the trial of this cause, and we deem it unnecessary to set out in detail the agreed statement of facts or other testimony upon which this cause was submitted to the trial court. It is conceded in the briefs of learned counsel for both appellants and respondents that the rights of the parties to this litigation rest upon the proper interpretation of the deed, which was embraced in the agreed statement of facts. With this view, to fully appreciate the legal propositions involved in the record before us, it is essential that the deed, which is the basis of this legal controversy, be reproduced. It was as follows:

"This deed made and entered into this twentieth day of November, eighteen hundred and seventy-seven, by and between John F. Lauman and Catherina Lauman, his wife, of the city of St. Louis, State of Missouri, parties of the first part, and William F. Lauman, of the county of St. Charles and State of Missouri, party of the second part, and said Catherina Lauman, party of the third part, Witnesseth:

"That the said parties of the first part, for and in consideration of the sum of one hundred dollars to them in hand paid by the said party of the third part, the receipt of which is hereby acknowledged, and the further sum of one dollar to them paid by said party of the second part, the receipt of which is also hereby acknowledged, do by these presents, grant, bargain and sell, convey and confirm unto the said party of the second part, his heirs and assigns and his successors in trust, forever, the following described real estate, situated in the city of St. Louis, to-wit: [Here follows description of the various parcels of real estate involved in this suit, besides other parcels.]

"To Have and to Hold the same, together with all and singular, the privileges and appurtenances thereunto belonging or in anywise appertaining, unto the said party of the second part, his heirs and as-

signs, and to his successors in trust and their heirs and assigns forever. . In Trust, however, as follows:

"First:  For the sole and separate use, benefit, enjoyment and behoof of the said Catherina Lauman, for and during the term of her natural life, entirely free from all control, restraint or interference on the part of her husband, the said John F. Lauman; the said Catherina Lauman, during the said term of her natural life, to have, hold, use, occupy and enjoy, the exclusive use and undisturbed possession of said real estate and the appurtenances thereunto belonging, with full power, jointly with her said husband, to direct the said William F. Lauman, trustee, and his successors in trust, to sell and convey, mortgage, encumber by deed of trust, lease, or make any other disposal of said real estate, or any part or portion thereof, at their will and pleasure; the said Catherina Lauman to receive to her own separate use and benefit the proceeds of such sale and encumbrance, and all rents and profits arising or accruing from the leasing or other disposal of said property; the said party of the second part and his sucessors in trust to hold said real estate during the lifetime of said Catherina Lauman and her husband John F. Lauman, subject at all times to the joint direction of the said Catherina Lauman and her said husband, as to the disposal of said real estate or any part or portion thereof, whether by lease, conveyance in fee, mortgage, deed of trust, transfer or assignment of this trust or otherwise, the said direction in writing to be evidenced by their joining with said trustee, or his successors in trust, in the execution of said lease, conveyance in fee, mortgage, deed of trust, or other instrument, and by their acknowledgment of the same, in due form of law.

"Second:  Should the said John F. Lauman survive the said Catherina Lauman, and said real estate has not then been disposed of as above provided, then the said party of the second part and his successors

in trust shall hold said real estate to the use, benefit and behoof of said John .F. Lauman, during the term of his natural life, with full power and authority vested in the said John F. Lauman, to receive and appropriate to his use the rents, issues and profits of said real estate; also at his will and pleasure to direct the sale, encumbrance or mortgage or deed of trust, lease, or any other disposition of said real estate as to him seem meet and proper. Also to appropriate to his own use, the proceeds of such sale, encumbrance or other disposition of said property, without being accountable for said rents, issues or profits, or the proceeds of such sale, or other disposition of said real estate, to any person whomsoever.

"Third: From and after the death of said Catherina Lauman and the said John F. Lauman, the said party of the second part and his successors in trust, shall hold the real estate above described, to the use, benefit and behoof, share and share alike of the children born or to be born of the marriage of said John F. Lauman and Catherina Lauman, the children now living, being named as follows, to-wit: John Henry Lauman, born May 30th, 1854; Catherina Maria Alvina Lauman, born November 25th, 1863; John Frederick William Lauman, born November 11, 1867; Catherina Carolina Wilhelmina Lauman, born September 13th, 1869; and the said party of the second part, or his successors in trust, shall collect and receive all the rents, issues and profits arising or accruing from said real estate, out of which he or they shall pay the taxes levied or assessed upon said real estate. Also whatever sum may be necessary or requisite for keeping the buildings upon said real estate in good repair, and in tenantable condition, also the costs and expenses of collecting the rents and income arising or accruing from said property, together with a reasonable compensation for his or their services as trustee, and the balance or residue of the rents or income from

said real estate, after deducting the taxes, cost of repairs, expenses of collecting and compensation of trustee as aforesaid, shall be divided equally between the said children, and shall be regularly paid to such of them as shall have attained their majority at the end of every six months in each year, or if the said trustee or his successors in trust, in his or their discretion, shall deem it more advantageous, and for the best interests of said children so to do, he or they may make such payments at the end of every three months in each year.

"During the minority of any of said children, the said trustee or his successor in trust, shall disburse the share of said rents and profits to which each minor child may be entitled, in such manner, for the support, maintenance and education of such minor, as he or they, in the exercise of their best judgment and discretion, may think proper and most conducive to the welfare and happiness of such minor.

"At the expiration of ten years and after the date when the youngest of said children shall have attained lawful age, the said trustee or his successor in trust, shall make a final settlement with each of said children, paying over to each of them then living, and to the heirs at law of such of them as may have departed this life, their respective equal shares as aforesaid, of the said rents and profits, and thereupon this trust shall cease and be determined, and the title to said real estate and every part and portion thereof, not disposed of as hereinbefore provided, shall without any act to be done or performed by said trustee or his successor in trust, pass to and become fully vested in fee simple in said children then living, and in the heirs at law of such of said children as may then be dead, to be held by them as tenants in common, according to their respective equal shares as aforesaid, and their inheritance from such of said children as may then be dead.

"And the said Catherina Lauman and John F. Lauman, or the survivor of them, at any time hereafter, whenever from any cause whatsoever, they shall deem it necessary or expedient, shall have full power by an instrument in writing under their hand and seal, made by them, acknowledged in due form of law, to nominate and appoint a trustee or trustees in the place and stead of the party of the second part above named, which trustee or trustees, or the survivor of them, or the heirs of such survivor, shall hold the said real estate upon the same trusts, and with the same powers and duties as above recited; and upon the nomination and appointment of such trustee or trustees, the estate in trust hereby vested in said party of the second part, shall thereby be fully transferred and vested in the trustee or trustees so appointed by the said Catherina Lauman and John F. Lauman, or by the survivor of them.

"And the said parties of the first part covenant to warrant and defend the title to said real estate and every part and parcel thereof, against the claim of all persons whomsoever.

"And the said party of the second part accepts and covenants faithfully to perform and fulfill the trust herein created.

"In Testimony Whereof, the said parties have hereunto set their hands and seals, the day and year first above written."

It is conceded by counsel on both sides of this controversy that the judgment of the trial court must stand or fall upon the correct interpretation of the deed as heretofore indicated, and if at the time of the execution and delivery of such deed its provisions created a vested remainder in the children designated, the plaintiff is entitled to recover and the judgment in this cause should be reversed. On the other hand, if the provisions of such deed created simply a contingent remainder in such children then the judgment rendered

by the trial court was proper and should be affirmed. In view of these concessions by both parties to this litigation we see no necessity for burdening this opinion with a detailed statement of all the facts developed at the trial.

As before stated, the judgment rendered by the trial court was for the defendants. A timely motion for new trial was filed and by the court taken up and overruled, and from the judgment rendered the plaintiff prosecuted this appeal, and the record is now before us for consideration.

## OPINION.

At the very threshold of the consideration of the questions involved in this proceeding it is well to keep in mind the legal propositions, the correct solution of which are sought by the respective parties to this controversy. They rest within a very narrow compass and can be stated in a few short sentences. On the one hand it is earnestly insisted that by the terms employed in the deed indicated in the statement of this cause there was created a vested remainder in the children of the grantors then born or thereafter to be born, and that the intention of the grantors gathered from the whole deed was to give his children such vested remainder. On the other hand it is with equal earnestness insisted that the deed upon which the rights of the parties to this controversy must rest simply created a contingent remainder in the children of the grantors, and that by giving due consideration to the entire deed and each and every provision in it the intention of the grantors to create such contingent remainder is clearly made manifest by the terms employed in the instrument. In other words, it is contended upon the one side that upon the execution and delivery of this deed by the grantors the interests of the children in the remainder were

vested at the date of the execution and delivery of such deed. On the other side it is contended that under the express provisions of the deed the title to the remainder in such real estate would not vest until ten years after the youngest child reached his or her majority, and that it was to vest in those of the children living at that period and the heirs at law of such of them as may then be dead. In harmony with such provisions it is earnestly insisted on the part of the respondents that under the terms of the deed the persons in whom the title would vest at the termination of the ten-year period could not be ascertained, hence the terms employed in the instrument created a contingent remainder.

It may also be added concerning the controversy in this proceeding that when this cause was first presented to this court, in fact upon the last oral argument upon the legal propositions involved, there was no dispute at that time between learned counsel for appellant and respondents as to the validity of the conveyance now before us for interpretation. It was frankly conceded by counsel for appellant as well as respondents that the deed involved in this controversy was valid and formed the basis upon which both parties predicated their rights so earnestly contended for in this suit. However, since the oral argument learned counsel for appellant have presented a supplemental brief in which numerous authorities are collated upon the subject of the rule of perpetuities. In this brief by counsel for appellant it is insisted that this deed created a vested remainder and is valid, but if the court construed the deed as creating a contingent remainder it is void on the ground that it violates the rule of perpetuities.

We shall not undertake to discuss this proposition for the reason that the record before us does not warrant the consideration of it. The record plainly discloses that the parties to this suit tried the cause

and sought the judgment of the lower court upon the theory that this deed was entirely valid, and the main controversy which arose was upon the force and effect of the deed, that is, whether or not it created in the children a vested or contingent remainder. It is sufficient to say upon that proposition that under the well-settled rules of this court parties will not be permitted to try causes upon one theory in the lower court and present them upon an entirely different theory in the appellate court. We are unwilling to convict in this proceeding the trial court of error upon a theory with which it was not confronted in the trial and disposition of the cause. This is an action in ejectment, and upon the pleadings in this cause the judgment rendered would not be held *res adjudicata* upon any subsequent suit in ejectment for the real estate involved in this proceeding, hence if the appellant should institute another suit in ejectment and insist upon the trial of that cause that this deed is void for the reason that it violates the rule of perpetuities, and the cause should again reach this court, it will be time enough to then treat of the proposition. Doubtless when the trial court is called upon to deal with that litigation upon the theory that this deed violates the rule of perpetuities, it will be confronted with many reasons why such rule does not and should not apply to the deed now under consideration; however, we repeat that the record does not disclose any such case before us. Upon the present state of the record confronting us we must decline to pass upon or even discuss the proposition as to the bearing that the rule of perpetuities has upon the cause now pending before us. Manifestly the plaintiff based her right of recovery upon the deed as heretofore indicated, and the trial proceeded upon that theory. Clearly if that deed is void the plaintiff was not entitled to recover in the trial court.

## I.

The text-writers, as well as the numerous adjudications, in treating of the subject of remainders, seem to have no trouble in clearly pointing out in a general way the distinction between vested and contingent remainders. The difficulty, however, has manifested itself in many of the adjudications in the courts of this country in the application of the rules of law which mark the distinction between vested and contingent remainders, to the terms employed in the particular instruments in judgment before such courts. One of the marked characteristics of a vested remainder is suggested by Mr. Tiedeman in his treatise upon Real Property, in the footnote to section 397, as a reliable test to determine whether the remainder is vested or contingent, that is, "the present capacity to convey an absolute title to the remainder," and, on the other hand, the marked feature of the class of contingent remainders with which we are dealing, is whether from the terms employed in the instrument of conveyance there is manifestly an uncertainty of the person or persons who are to take the remainder. In other words, as expressed by Mr. Fearne on Contingent Remainders, p. 217, "where the contingency depends upon the uncertainty of the person who is to take the remainder," that is, where the remainder is limited to a person not ascertained by the terms of the instrument, the remainder is contingent.

Mr. Tiedeman on Real Property (2 Ed.), sec. 402, points out instances whe i the remainder would be a contingent one. He says: "If the remainder is limited to children living at the death of the life tenant, the remainder is contingent until the death of the life tenant. This is so, although it may be provided that in the event of the prior death of any of the children, the share of such child or children should vest in his or their issue. The issue would in that case

take as purchasers and not as heirs, unaffected by any attempted conveyance of the remainder by the deceased parent.''

In Emison v. Whittlesey, 55 Mo. 254, the conveyance in judgment before the court was made to A in trust for the sole and separate use of B, a married woman, for life, and upon her death the remainder to vest in her children and the children of such of her children as were dead at her death. This court in treating of that proposition very clearly and correctly stated that "at the time of the deed it was impossible to say that any one was in existence who could take the remainder. No one could tell that any of the children would survive the mother. It was, therefore, a contingent remainder."

DeLassus v. Gatewood, 71 Mo. 371, was a case where the testator had devised all of his property to his wife for life or widowhood. It was provided that at her death the property was to be equally divided between the children of the testator that were alive, or their bodily children, naming them in the instrument. This court in that case, on page 381, thus stated the law as applicable to the provisions in the will as suggested: "Until the death or marriage of the tenant of the particular estate, it was impossible to ascertain who of the children of the testator, or their bodily children, would be alive to take in remainder." The remainder in that case was held to be contingent, and that the heirs of one of the children named, who died before the mother, had no interest in the estate.

Vested or contingent remainders are determined not by the uncertainty of enjoying the remainder, but by the uncertainty of the vesting of the estate. It is this uncertainty of the persons who are to take in remainder which creates one class of contingent re-

mainders.    [Rodney v. Landau, 104 Mo. l. c. 257-8; Emmerson v. Hughes, 110 Mo. l. c. 630.]

1 Preston on Estates, p. 74, in treating of this subject, uses this language: "It is not the uncertainty of enjoyment in future, but the uncertainty of the right to that enjoyment, which marks the difference between an interest which is vested and one which is contingent."

In Taylor v. Adams, 93 Mo. App. 277, the conveyance disclosed by the record in that case was to Mrs. Taylor for her sole and separate use for life, with power to dispose of the fee by sale, and in case she failed to direct the sale then the same was to be equally divided between her children or their descendants, the children of any that were dead to take the place of their parents. The appellate court in that case held that the conveyance created a contingent and not a vested remainder.

The appellate courts of numerous other States have treated of the subject of remainders and have pointed out very clearly the distinction between vested and contingent remainders. The authorities from such other jurisdictions have been fully collated and cited by counsel for respondent in their briefs, and it is sufficient to say of them that they are in harmony with the views of the text-writers herein indicated, as well as with those of the Supreme Court and Courts of Appeals of this State.

## II.

Directing our attention to the provisions of this deed, it will be observed that there is only one clause in the deed which undertakes by express provisions to designate the time when the title to the remainder of the estate shall vest. That provision of the deed is as follows: "At the expiration of the ten years from and after the date when the youngest of said children

shall have attained lawful age, the trustee shall make final settlement with each of said children, paying over to each of them then living, and to the heirs of such of them as may have died, their respective equal shares of the rents and profits; and thereupon the trust shall cease and be determined, and the title to said real estate and every part and portion thereof, not disposed of as hereinabove provided, shall without any act to be done or performed by said trustee, pass to and become fully vested in fee simple in said children then living, and in the heirs at law of such of them as may then be dead.''

It is insisted by learned counsel for appellant that this clause in the deed did not create a contingent remainder, and it is suggested that ''if, in this case, the deed had said that the remainder should go to those children of the grantors living at the time of the death of their mother, the life tenant, then the right of either child to have any part of it would be contingent on his or her surviving the mother, and if that were the fact in this case, this would be a contingent remainder.''

Now, while it may be conceded that a recitation in the instrument of the facts suggested would create, as is insisted by the appellant, a contingent remainder, however it is manifest that the basis upon which the case as suggested is a contingent remainder, is predicated upon the uncertainty of whether or not the children or any of them would be alive at the time of the death of the mother, but it will certainly not be seriously contended that there are not other uncertainties as to when the estate in remainder should vest that would make the remainder a contingent one.

It is by no means essential in order to create a contingent remainder that the uncertainty in the deed now under consideration should be of the precise nature and character suggested by counsel for appellant. In the clause of the deed to which particular attention has been directed, which expressly provides that ''at

the expiration of ten years from and after the date when the youngest of such children shall have attained lawful age'' the title in fee to the real estate shall vest in the children of the grantors ''then living, and in the heirs at law of such of them as may then be dead,'' we have an uncertainty as plainly manifest as is made by the facts suggested by appellant. The contingency suggested that the remainder should vest in the children at the death of the mother is of no greater force and does not manifest any greater uncertainty than the provision which vests the remainder in the children living at the expiration of the ten-year period. There is absolutely no distinction to be drawn between the character of the remainder in the supposed case and the character of the remainder expressly provided for by this deed. The essential elements of uncertainty necessary to create a contingent remainder in the supposed case suggested and the uncertainty which appears upon the face of the deed now in judgment before us, in contemplation of law stand upon the same footing.

## III.

It is next insisted by learned counsel for appellant that the clause fixing the time when the title should vest, and expressly providing that at such time without any act to be done or performed by the trustee the fee simple title should pass and become fully vested in said children then living, and in the heirs at law of such of them as may then be dead, were unnecessary words, without force or vitality, and should not be considered in reaching a correct conclusion of the true interpretation of the instrument now under consideration.

With the highest respect and consideration for the views entertained by learned counsel for appellant we are unable to give our assent to this insistence. It is

apparent that if the grantors in this deed intended to create a vested remainder the clause which is now under discussion was unnecessary; but, if on the other hand the grantors saw proper to embrace in such deed an express provision designating the time when the title in fee simple should pass, as well as the persons in whom such remainder should vest, and if under the terms of the deed it was uncertain as to the persons who would take the remainder, we are unable to comprehend upon what rule, either in law or equity, such clause can be ignored in the interpretation of the instrument now in judgment before us. To ignore the provisions of this deed, as suggested by appellant, would certainly be doing violence to the terms employed in the conveyance, and would fall far short of being in harmony with the plainly manifest intentions of the grantors in such instrument.

The rule is well settled in this State, in fact it is no longer an open question, that in the interpretation of contracts, whether it be deed or any other instrument of writing, the proper construction of the instrument must be sought from the entire deed, and not merely from any particular part of it. In the early case of Gibson v. Bogy, 28 Mo. 478, this court in discussing that proposition thus laid down the rule which has never been departed from: "In the construction of deeds, the intention of the parties must govern as in other cases of contract. If the language is free from ambiguity, the instrument must be construed according to the plain common meaning of the words, but the construction must be on the entire deed, and not merely on any particular part of it; and it is the duty of the courts 'to endeavor to find out such a meaning in the words as will best answer the intention of the parties.' "

In Orr v. Rode, 101 Mo. l. c. 396, this court used this language: "In the construction of such an instrument as the deed" in question "the first and best rule

of interpretation is to gather from the entire document, as best we may, the intention of the parties to it and give effect to such intent when manifest.''

It is fundamental that all parts of an instrument are to be construed as consistent with each other, if such construction be possible. [McCullock v. Holmes, 111 Mo. l. c. 447.]

In Meyer v. Christopher, 176 Mo. l. c. 594, the uniform rules as announced by this court treating of this proposition were strictly adhered to, and it was there stated: ''Courts construe contracts and ascertain their meaning from all of the provisions of the contract and not from single words or phrases or sentences, and when the intention of the contracting parties is thus ascertained, that intention will be effectuated, unless it violates some inexorable rule of law.''

In Williamson v. Brown, 195 Mo. l. c. 336-337, this court, speaking through LAMM, J., very clearly and correctly pointed out the well-recognized rule for the interpretation of written instruments. In commenting upon the case of Utter v. Sidman, 170 Mo. 284, it was said that ''the doctrine of that case is, in a nutshell, that the old cast-iron general rule, that, if there be repugnancy, the first words in a deed and the last words in a will shall prevail, no longer obtains in Missouri.'' In that case the rule as announced in the Utter case was quoted approvingly and attention was specially directed to that quotation, which is as follows: ''In short [under the old rule] a grantor might convey as he pleased and his intention and wishes would be observed by the courts, but with this qualification, that he must express his intention in set and technical language and at the proper places and in the right order and clause of the deed. Failing to do so, the courts did not feel called on to bother about his intention, but took what he said first as expressing conclusively his intention and disregarded everything else as void for repugnancy. Such a rule of construction

made it almost impossible for anyone except a very expert conveyancer to draw an instrument that would stand the test of the rule, and likewise made it very easy for the courts in construing complicated instruments, but it is not clear that the real intention of the grantor was ascertained or effectuated. · The modern rule, which prevails in this State, is much simpler and much more calculated to carry out the wishes of the grantor. The intention of the grantor, as gathered from the four corners of the instrument, is now the polar star of construction. That intention may be expressed anywhere in the instrument, and in any words, the simpler and plainer the better, that will impart it, and the court will enforce it no matter in what part of the instrument it is found.''

## IV.

It is next maintained that the trustee in executing the provisions embraced in the deed, which directed him to collect the rents and pay them over to the children, was not acting as a mere agent or as one controlling the mere power, but it is insisted that he was acting as trustee holding the title in trust, and the persons to whom he was to pay the money collected were not mere donees of the money, but were equitable owners of the land, and the money was theirs because it was the fruit of the land. We are unable to give our assent to the correctness of this contention. The grantors in this deed expressly created this trust, and the powers delegated to the trustee were not left to mere conjecture or surmise, to be exercised upon the theory that as he·was holding the land in trust, hence by legal presumption followed the right to collect the rents and pay them over to the children, but the grantors in this deed not only expressly created the use of the rents for the children, but expressly designated and plainly pointed out the manner in which such use should be

executed and carried out by the trustee; hence it must logically follow that under the provisions of this deed the right to collect the rents and disburse them emanates from the deed itself. The children were not entitled to the money arising from the rents by reason of any title or interest in the land, but they were only entitled to such money because the deed directed the trustee to pay the money over to them, and we are unwilling to sanction the doctrine that because the trustee is directed to pay the income derived from the property to the children, such fact had the force and effect of a conveyance of any title to the land itself.

Manifestly had this deed provided that after the ten-year period had elapsed the legal title to the real estate involved in this proceeding should be conveyed by the trustee or become fully vested in some person other than those named as the children of the grantors, the right of the children to receive money in the interval of the time between the expiration of the life estate and the expiration of the trust could not have depended upon any title to the real estate being vested in them. We repeat, that the rights of the children to the money arising from this property held by the trustee can only be predicated upon the express provisions of the deed and the plain directions given to the trustee to pay such money over to them

## V.

The provision of this deed upon which appellant chiefly relies for support of the insistence that this deed created a vested remainder, is that after the death of said Catherina Lauman and said John F. Lauman, the said trustee shall hold the real estate involved, or so much thereof as shall not have been disposed of by the life tenants, to the use, benefit and behoof of the children born or to be born of the marriage of said John F. Lauman and said Catherina Lauman,

the children living at the time of the execution of the deed being named in the instrument.

Directing our attention to this provision it will be observed that there is an entire absence of any power either in the trustee or the children named, of disposition of any portion of the property that was left at the death of the life tenants, and it will be further observed that in the creation of this use it is not provided that this land shall be held in trust for the children and *their heirs or assigns,* but the deed simply creates a use and limits it for the benefit of the children, and such use created is fully pointed out and explained by the terms which follow its creation.

In treating of the provision which creates the use for the benefit of the children, the intention of the grantors should not be interpreted from simply some portions of the recitals in this provision. In arriving at the true intention of the grantors the provisions of the entire instrument must be looked to, and with the observance of this rule, when we consider, following the creation of this use for the benefit of these children, the particular and detailed directions given the trustee as to the execution of this use, which was applicable alone to the keeping of the property in repair, collecting the rents and paying it at stated times to the children, there is no difficulty in arriving at the conclusion, when the deed is considered in its entirety, that by that provision it was not intended to vest any title to the real estate in such children at the date of the execution of the deed now under consideration. No one can analyze the provisions of this deed without fully recognizing the well-settled purpose of the grantors in this conveyance to keep the property in the family and withhold the title and control of such property until such period (which is designated in the deed) as it appeared to such grantors the judgment of such children might be sufficiently matured to take the title to the real estate and deal with it as their own. This

settled purpose of the grantors, which is made so plainly manifest by the provisions in this deed, very clearly negatives any intention on their part to create a vested remainder at the date of the execution and delivery of such deed.

While it is true that whether the remainder was vested or contingent, the children upon arriving at their majority might barter, sell, give away, or devise their interests in such estate, it is common knowledge that there is a marked difference between dealing with vested and contingent remainders in estates, and this difference is more intensely marked in the opportunities for deals concerning such interests, hence, if this deed created a vested remainder in the children at its date and was so intended by the grantors, it is significant that there is an entire absence of any provisions to meet the conditions should any of the children, after reaching their majority, give away or convey for a consideration their *title* to the estate in remainder prior to the expiration of the ten-year period.

A careful analysis of the provisions of this deed most clearly indicates that the grantors therein, in each and every provision of the deed, were extremely watchful as to where the title to this land should vest. Emphasizing the correctness of the conclusion that the grantors never contemplated in the execution of this deed the creation of a vested remainder, it will be observed by a careful analysis of the language employed in it that the grantors never recognized any power either in the trustee, the children or anyone else, to convey or dispose of the title or any part of this property except in the manner pointed out by the deed, which was applicable alone to conveyances made upon directions of the life tenants. If the grantor, as is insisted upon by appellants in this case, intended to create a vested remainder, he must have known that the children that were of age at the time of the execution and delivery of the deed and the other children

upon reaching their majority would have the right, by appropriate instruments, to either give away or convey in any other manner recognized by law such vested estate; hence it is significant when the deed was executed the grantors expressly provided that after the death of the life tenants the trustee should take charge of all portions of the property that had not been conveyed by the life tenants in the method pointed out by the deed. Then follows the express directions of the trustee that his dealing with such property, so far as the rents are concerned, shall be with the children, and manifestly the thought seems to have never entered the minds of the grantors that by this deed a vested remainder was created. If so it clearly follows that the children upon reaching their majority possessed full power to convey the *title* to the interest in the estate remaining upon the death of the life tenants. Those of the children who were of age at the date of the execution and delivery of this deed were authorized to pass the title to their interests in such estate. The same may be said as to the other children as they reached their majority. This clearly would be in direct conflict with the express provisions of this deed, which designates the time when the title to the remainder of this estate shall vest and in whom it shall vest. It is not a sufficient answer to this question that it may be said that if the remainder was a contingent one the children would also have the right to convey such interests prior to the death of the life tenants and prior to the expiration of the ten-year period. That may be conceded to be true, yet, as heretofore stated, there is a marked difference between a vested and a contingent remainder. If the remainder is vested and the children should undertake to convey it they deal with the title to whatever estate is left upon the death of the life tenants. On the other hand, the children in undertaking to convey their interests in a contingent remainder would be dealing with a mere contingency.

Their interests would not be vested. Their conveyance would not pass any title to a vested interest. The title does not vest until the expiration of the ten-year period, and then it passes to the children living at that period and the heirs of those who have died, hence a conveyance by any of the children prior to the expiration of the ten-year period and the termination of the trust would simply be dealing with a mere contingency, and it would not and could not be known to the parties to that transaction at the date of the consummation of it, as to whether or not any title to the remainder of such estate had passed by such conveyance. Manifestly the grantors in this deed never contemplated that they were executing an instrument by which the title to the estate remaining after their death might be conveyed to entire strangers prior to the period designated by the express provisions of the deed, and even prior to the death of either of the life tenants. If this be the nature and character of this instrument, then we are unable to comprehend the great concern the grantors manifest in the provisions of this deed about the children.

As before stated, the grantors in this deed in the first use created retained the absolute control of the property. This deed retained in the grantors, John F. Lauman and Catherina Lauman, absolute power to control and dispose of the title until the death of the survivor of them and gives them unconditionally all the rents and the entire proceeds of the sale of the property. By the provisions of this instrument they have power to control and convey the property in fee and the right to take the proceeds as absolutely their own. This in effect constituted the entire ownership of the property. It will be noted that the life tenants, the grantors, retained absolute power to direct the sale and the right to retain as owners the entire proceeds of such sale. It must not be overlooked that in order to hold that the remainder was vested, as con-

tended for by the appellants, it must be found that the children did take a vested interest in the property from the execution and delivery of the deed on November 20, 1877. In our opinion, the strong terms employed in this deed to safeguard the absolute control and in fact the entire ownership of this property, indicates at least in some degree the intention of the grantors to exclude the possibility during their lives of a vested right in any one else.

## VI.

Again recurring to the consideration of the clause in this deed (which appellant insists was unnecessary and without any force or effect) after a most careful and thorough analysis of each and every clause embraced in the instrument now under consideration we have reached the conclusion that this final clause is the most vital of any contained in it. In the first place, it is the only provision in the deed which, after the vesting of the title in the trustee, undertakes to further deal with the title to this property and divest the title out of the trustee and invest it in those designated by the grantors in the deed. This clause, it will be noted, was the final provision of this instrument which undertook to deal with the disposition of this property, and doubtless was inserted with a full recognition of the provisions of the deed which preceded it. There is no uncertainty or ambiguity in the terms employed in this clause. They are plain and clearly manifest the purpose and intention of the grantors so far as concerns the time at which the title shall vest, and the persons who are to take such title. It is expressly provided in this clause that, ''At the expiration of ten years from and after the date when the youngest of said children shall have attained lawful age, the said trustee or his successor in trust shall make a final settlement with each of said children, paying over to each of them then liv-

ing, and to the heirs at law of such of them as may have departed this life, their respective equal shares as aforesaid, of the rents and profits, and thereupon this trust shall cease and be determined, and the title to said real estate and every part and portion thereof, not disposed of as hereinbefore provided, shall without any act to be done or performed by said trustee or his successor in trust, pass to and become fully vested in fee simple in said children then living, and in the heirs at law of such of said children as may then be dead.''

The grantors in this clause in no uncertain or doubtful terms designated the exact time when the title to this real estate should vest, and in the language employed in that clause they have manifested very clearly that they did not recognize that the title to the real estate remaining after their death, or any part of it, was vested, nor was it their intention to do so, by any of the other provisions embraced in this instrument. This deed provides that at the date, which was ten years after the youngest child becomes of age, ''the title to said real estate and every part and portion thereof, *not disposed of as hereinbefore provided, shall pass to and become fully vested in fee simple in said children then living and in the heirs at law of such of said children as may then be dead.*''

It will be noted that the only method provided for the conveyance of this property by this provision of the deed, preceding the clause now under consideration, was by direction of the life tenants or the survivor of them. This being true, the provision in the deed which fixed the date when the title should pass and vest, with the express provision that the title which the grantors sought to pass and vest by this clause, being the title to every portion of the real estate which had not been previously conveyed under their direction during their life tenancy, excludes the idea of a vested remainder, and we see no escape from the conclusion that the title which passed and vested under the pro-

visions of that clause and expressed to be the title to every part and portion of the real estate which had not been disposed of by the grantors in the method pointed out by the deed, is an absolute exclusion of the theory that any title in remainder was vested in any person at the date of the execution and delivery of this deed. In other words, when these grantors say in this clause of this deed that the title to every part and portion of the real estate remaining after their death, which was not disposed of by their directions by the trustee during their lives, shall then pass to their children then living, they fixed an absolute exclusion that any title to an estate in remainder vested at the date of the execution of the deed, and that exclusion clearly negatives any intention upon the part of the grantors by the provisions of this deed to create such vested remainder. In our opinion this clause in the deed is a very vital one, and we are unable to concur in the views. expressed by counsel for appellant, which in effect maintain that the provisions of this clause were of no force or vitality.

We have herein indicated the long and unbroken line of decisions applicable to the rule for the interpretation of written instruments, which have with such uniformity held that in the interpretation of such instruments the proper construction must be sought from a consideration of the entire writing. If these cases are to be longer followed and regarded as a guide to this court, we are unable to see how the provisions of this clause in the deed can be ignored. With the plain and unambiguous terms of this clause there is no necessity for surmises or speculations as to the time when the title passed to this real estate. It is the only one in which the title to the remainder of this real estate is dealt with, and it expressly provides that after the expiration of ten years from the time the youngest child becomes of age the title shall pass to and become fully vested in fee simple in the children of the grant-

ors then living, and in the heirs at law of such of said children as may then be dead.

The inquiry is further made on the part of the appellant that if the equitable estate in fee did not vest until ten years after the youngest child became of age, where was it between the termination of the life estate in 1893 and the expiration of the ten-year period in 1897?

It is a sufficient answer to that inquiry to say that under the provisions of section 4596, Revised Statutes 1899, it was not necessary that there should be any estate created between the end of the life estate and the vesting of the estate in remainder. It was expressly ruled by this court in O'Day v. Meadows, 194 Mo. 588, that an estate may be created by deed to commence in the future without any intervening estate to support the same. But aside from all this, in our opinion, under the provisions of this deed the legal title to the real estate embraced in such deed was vested in the trustee, and he held the same until the period fixed for the termination of the trust, which was ten years after the youngest child reached its majority.

## VII.

Our attention is next directed to the final provisions of this deed in which it is provided that at the expiration of the trust the title to all of the real estate and every portion thereof which had not been disposed of by the life tenants in the manner provided in the deed, should pass to and become fully vested in fee simple in said children then living and in the heirs at law of such of said children as may then be dead.

It is sufficient to say concerning that provision of the deed that if the conclusion reached as to the interpretation of it is the correct one, then it is only necessary to suggest that the terms in the deed, "heirs at law of such children as may then be dead," do not mean that the heirs at law were to take by descent the

interest of such children as may then be dead, but under the well-recognized rules applicable to such provisions in instruments passing title to real estate, such heirs at law will take as purchasers under and by virtue of the deed. In other words, those terms indicate the person or persons to whom the grantors give the estate in remainder by way of substitution for the deceased children, and those terms by no means should be construed that the heirs at law were to take the estate by descent through the deceased.

We see no necessity for pursuing this subject further. We have given expression to our views upon the main propositions disclosed by the record, which results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered. *Burgess, Lamm* and *Graves, JJ.,* concur; *Valliant, C. J., Gantt* and *Woodson, JJ.,* dissent.

## DISSENTING OPINION.

VALLIANT, C. J.—This is an action in ejectment in which the plaintiff claims an undivided one-fourth of a certain lot in the city of St. Louis. There is no dispute about the facts. John F. Lauman was the owner of the land November 20, 1877; on that day he made a deed which was duly acknowledged and recorded whereby he conveyed the land to William F. Lauman in trust for certain purposes, to-wit: first, for the sole use and benefit of the grantor's wife Catherina during her life, with power of disposition; second, for the sole use and benefit of the grantor after the death of his wife if he should survive her, with power of disposal; third, ''From and after the death of said Catherina Lauman and said John F. Lauman, the said party of the second part and his successors in trust, shall hold the real estate above described, or so much thereof as

shall not have been disposed of as above provided, to the use, benefit and behoof, share and share alike, of the children born or to be born of the marriage of said John F. Lauman and Catherina Lauman, the children now living being named as follows.'' Then follow the names of their four children living and directions to the trustee to collect the rents, pay the taxes, make repairs, etc., and divide the net income equally between the children paying to those who are of age their shares at periods named and applying the shares of the minors to their education and maintenance, after which comes the following clause in the deed, out of the conflicting interpretations of which this law suit has arisen: ''At the expiration of ten years from and after the date when the youngest of said children shall have attained lawful age, the said trustee or his successor in trust, shall make a final settlement with each of said children, paying over to each of them then living, and to the heirs at law of such of them as may have departed this life, their respective equal shares as aforesaid, of the said rents and profits, and thereupon this trust shall cease and be determined, and the title to said real estate and every part and portion thereof, not disposed of as hereinbefore provided, shall without any act to be done or performed by said trustee or his successor in trust, pass to and become fully vested in fee simple in said children then living, and in the heirs at law of such of said children as may then be dead, to be held by them as tenants in common, according to their respective equal shares as aforesaid, and their inheritance from such of said children as may then be dead.''

The defendants interpret that clause to mean that the estate in remainder was contingent and was not to vest until ten years after the youngest child came of age and then to vest in the children then living and in the heirs of those then dead. The plaintiff contends that, taking that clause in connection with the whole

deed, the estate in remainder was vested on the execution of the deed.

There were no other children born to John F. Lauman and his wife than the four named in the deed, viz: John Henry, Catherina Maria Alvina, John Frederick William, and Catherina Carolina Wilhelmina.

John F. Lauman, the grantor, died in 1879, Catherina his wife survived him and died in 1893. John Henry, the oldest child, died before his mother in 1892, leaving his widow, who is the plaintiff in this suit, but no child; he left a will by which he devised all his estate to his widow the plaintiff, and she now claims title to an undivided fourth of the land by virtue of that will. The youngest child, Catherina Carolina Wilhelmina, came of age September 13, 1887; therefore, the date appointed for the termination of the trust came September 13, 1897. At that date all the children except John Henry were living, they are still living and in possession of the property in question and are the defendants in this suit. John Henry's widow and devisee has married again and is now Mrs. Buxton.

There is but one question in the case, that is, did the deed create an equitable vested remainder in the children of the grantor? If yea, the plaintiff is entitled to recover; otherwise, not. The court rendered judgment for the defendants and the plaintiff appealed. We do not discover much difference in the opinions of the counsel in this case concerning the law of remainders or the rules by which vested are to be distinguished from contingent remainders, but the difficulty lies in the application of the rules to the facts of the case.

The fact that the share of the estate the remaindermen may take, when the time specified for its enjoyment comes, may depend on a contingency, does not constitute it a contingent remainder. The remainder may be given to a class liable to be increased in number.

In Tiedeman, R. P. (3 Ed.), sec. 302, it is said: "The general rule is that a remainder is contingent if the persons who are to take are not *in esse*, or are not definitely ascertained. But where the remainder is limited to a class, some of whom are not *in esse*, the remainder has repeatedly been held to be vested— liable, however, to open and let in those who are afterwards born during the continuance of the particular estate." This court so held in Gates v. Seibert, 157 Mo. 254. Therefore, the fact that this grant was to the children born and to be born does not militate against the proposition that it was a vested remainder.

Nor does the fact that the body of the property is liable to be diminished by the life tenant by exercise of the power of disposal affect the character of the remainder. The general rule of law is that where there is an absolute power of disposal in the first taker it will be construed to mean that an absolute estate in fee is granted and therefore there is no remainder left unless there are words in the will or deed clearly showing that it was the intention of the grantor to convey to the first taker an estate less than a fee and to reserve or otherwise dispose of the remainder. But where as in this case express words are used limiting the grant to the first taker to a life estate and disposing of the remainder in fee the remainder passes burdened with the power. [Tiedeman, R. P. (3 Ed.), sec. 298.] That rule is recognized by this court in Cornwell v. Wulff, 148 Mo. 542.

In one of the briefs for respondent it is argued that if John F. Lauman had survived his wife he would have had the disposal of the property and it would have been subject to execution on a judgment against him, and that that condition was inconsistent with the power of the remaindermen to sell. Of course under the terms of our statute, section 3397, Revised Statutes 1899, the deed in trust for the benefit of the grantor was void as to creditors, and the property was liable

to be taken for his debts, but there is no creditor in this case; the deed is good between the parties, and if there were creditors then the remaindermen would take subject to their rights, the estate would vest with the burden.

It is an essential element to an estate of vested remainder that there be a present right of future enjoyment, but if that element is present the time appointed for the enjoyment to begin may depend on a contingency and the degree of enjoyment may be affected by a contingency that would burden the property, yet the estate would vest *in praesenti*. The author above quoted, in section 301, says: "No uncertainty of enjoyment will render the remainder contingent. The contingent or vested character of the remainder is only determined by the uncertainty which attends the vesting of the right to the estate." And afterwards in the same section the author says: "Wherever there is a doubt as to whether a remainder is vested or contingent, the courts always incline to construe it a vested estate." Therefore, when we are construing an instrument which creates a remainder and we find in it an element of contingency we must determine whether the contingency refers to the estate granted or to the time when the grantee may go into possession; if it refers to the estate granted then the estate is a contingent remainder, but if it refers only to the period of enjoyment the estate is vested.

In a note to the text, Tiedeman on Real Property (3 Ed.), section 297, several tests to determine whether the remainder is vested or contingent are discussed and the test there suggested is: "the present capacity to convey an absolute title to the remainder." But the author, continuing, says: "This test would, however, give rise to a qualification, where the remainder is to a class and some of the class are not yet *in esse*. The remainder, so far as those *in esse* are concerned, is held to be vested (see post, sec. 302), while such re-

maindermen could not convey an absolute title, thus excluding the after-born members of the class from their right in the remainder, although they can convey an absolute title to *their own* interest in it." Under that rule, if this is a vested remainder, either of the four children named could, at any time after the execution of the deed, have conveyed his or her interest subject to diminution of the share by the birth of another of the class.

Where the contingency named is such as to render it uncertain what person or persons will take the remainder when the time comes, then it is a contingent remainder. If in this case the deed had said that the remainder should go to those children of the grantor living at the time of the death of their mother, the life tenant, then the right of either child to have any part of it would be contingent on his or her surviving their mother, and if that were the fact in this case this would be a contingent remainder, but it is not the fact.

In the briefs we are referred to decisions of this court bearing on this question, but they all recognize the principles above stated and the only difference between them grows out of the difference in the facts. In Emison v. Whittlesey, 55 Mo. 254, the deed was to A in trust for the sole use of B, a married woman, for life, remainder in fee to the children of herself and her husband living at the time of her death and the children of any of their deceased children living at the time of her death. The court said: "At the time of the deed, it was impossible to say that any one was in existence who would take the remainder. No one could tell that any of the children would survive the mother. It was, therefore, a contingent remainder."

In DeLassus v. Gatewood, 71 Mo. 371, the remainder was to the children or their bodily heirs living at the death of the life tenant. It was held that that was a contingent remainder because, although there were several children living when the will was made, it was

impossible to say that one of them would survive the life tenant, their mother.

In Emmerson v. Hughes, 110 Mo. 627, the deed was to "Mary R. Goodman for and during her natural life and with remainder to the heirs of her body." At the date of the deed she had six children living. She and her six children executed a deed conveying the land to defendant's grantor; one of the children, after executing the deed, died during the lifetime of the life tenant, leaving an heir, who after the death of the life tenant brought suit for his share of the land, and recovered judgment, which this court affirmed. In that case it was contended by the defendant that the deed conveyed a life estate to Mrs. Goodman with a vested remainder to her children, but the court held that it was no remainder to the children, as children, at all, but the remainder was "to the heirs of her body," and who would be such heirs could not be known until her death.

In contrast with those cases is Jones v. Waters, 17 Mo. 589, where the devise was to the testator's wife "for and during her natural life, and after her death to descend to her children by me, equally, share and share alike." There it was held the children took a vested remainder, they did not have to wait until they filled the description of the word "heirs," their right did not depend on their surviving their mother. Without consuming the more time and space that would be required to review the other decisions of this court cited in the briefs, we are content to say that they all announce the governing principles above stated, and therefore we will proceed to their application to the facts of this case.

By the first clause of the deed the grantor conveyed to "the party of the second part, his heirs and assigns and his successors in this trust, forever, the following described real estate situated in the city of St. Louis, to-wit," etc. The grantor thereby parted with the whole estate, he reserved no part of it, it all

went to the grantee for the uses and purposes thereinafter specified. The deed created a legal and an equitable estate, the legal estate vested in the trustee, the equitable estate vested, or was to vest, in the beneficiaries named. The intention to pass the whole legal estate to the trustee was no more clear than was the intention to pass the whole equitable estate to his wife and children. The equitable estate he divided into an estate for life and an estate in fee in remainder. There is no doubt as to who was to be the beneficiary of the one or who the beneficiaries of the other, for they are all named or described in the deed and the remaindermen are described as children, not as heirs, and there are no words to indicate that their right is to depend on their surviving the life tenant. Between the life estate given to his wife (and the fragment thereof extended for himself in case he should survive her) on the one hand, and the remainder to his children on the other, there is no estate created, there is nothing between them. If therefore the equitable estate in fee did not vest until ten years after the youngest child came of age, as respondents contend, where was it between the termination of the life estate in 1893 and the expiration of the ten-year period in 1897? It was either in the trustee or it was in the children named and, if it was in them then, it had been in them since the execution of the deed. It was specified in the deed that in that interval of time the trustee should collect the rents and pay them over or apply them as directed. In doing so he was not acting as a mere agent or as one executing a mere power, he was acting as trustee holding the title in trust and the persons to whom he was to pay the money collected were not mere donees of money, but they were equitable owners of the land and the money was theirs because it was the fruit of their land. To the extent, therefore, at least of enjoying the rents arising from the land, their proprietary use of the property began immediately on the termination of

the life estate. The language of the deed is that after the death of the life tenant the trustee "shall hold the real estate above described or so much thereof as shall not have been disposed of as above provided to the use, benefit and behoof share and share alike of the children born or to be born," etc. He was to hold the title for them, they were therefore the *cestuis que trust* of the title which he held and he was to collect and pay over to them the rents arising from their property. This he was to continue to do until the expiration of ten years after the youngest child should have attained lawful age and then he was to "make a final settlement with each of said children paying over to each of them then living and to the heirs at law of such of them as may have departed this life, their respective shares as aforesaid of the said rents and profits."

The language there used shows that the grantor understood that he had given the title to his children and the intervention of the trustee was only to put that much restriction on the use or enjoyment of the estate, he doubtless thought it would be better for them to have the estate managed by a trustee until the youngest child should reach a comparatively mature age. When the trustee should make his final settlement he was to pay to the children then living their respective shares and if any of them had died he was to pay it, not to the survivors of the class, but to the heirs of the deceased, that is, he was to pay it to those who had inherited the interest which the deceased children of the grantor had owned, but if the equitable title had not vested in the deceased children in their lifetime how could there be any heirs to such title?

So far there is nothing obscure in the meaning of the deed, and if the clause in question had ended with the words above quoted there would have been no room for controversy as to its meaning, the words preceding were all-sufficient to convey the whole title to the trustee for the use of the grantor's wife for life and his

children in remainder in fee, but defendants are advised that the words following give a significance to the whole instrument and have the effect to qualify all that had gone before in the granting clause and to designate a time, not alone when the free and unrestricted enjoyment of the estate was to begin, but when the estate was for the first time to vest. The language is, "And thereupon [that is, upon the final settlement of the trusteeship] this trust shall cease and be determined, and the title to said real estate and every part and portion thereof, not disposed of as herein provided, shall without any act to be done or performed by said trustee or his successor in trust, pass to and become fully vested in fee simple in said children then living, and in the heirs at law of such of said children as may then be dead, to be held by them as tenants in common, according to their respective equal shares as aforesaid, and their inheritance from such of said children as may then be dead."

The office of the trustee would have ended and the title which the grantor's children up to that time had held would have changed its character from an equitable to a legal estate by force of the deed without any relinquishment of title from the trustee even if the words last quoted had not been added to what had preceded, therefore those words were unnecessary, but they did not alter the effect of all that had gone before. The conveyancer may have thought that unless such words were used the legal title would remain in the trustee after he had settled his accounts and descend to his heirs, leaving only the equitable title in the testator's children, and in order to put that trouble out of the way and avoid the consequence of a possible disinclination or accidental incapacity on the part of the trustee to execute a deed of relinquishment the words were used to render such a deed unnecessary. But whatever may have been the idea of the conveyancer we are satisfied that the intention of the grantor gath-

ered from the whole deed was to give his children a vested fee in remainder and the office of the trustee was continued to the period named only to secure what the grantor deemed a judicious management of the property until his children were old enough to have mature judgment; in other words, it was a restriction on the use and a postponement of the time for full enjoyment of the estate, but not a postponement of the time of the vesting of the title.

There is no question but that the whole title which the grantors had before the execution of the deed passed out of them by its execution and whatever title they thereafter had in the property was derived from the deed itself.

That deed conveyed the whole legal title to the trustee and divided the equitable title into a life estate and remainder in fee. But for the active duties the trustee was given to perform, the deed would have fallen within the terms of the Statute of Uses and Trusts, with the result that the equitable title would have drawn to it the legal title and the trustee would have been discharged. The active duties, however, suspended the merger of the title and, while those duties remained to be performed, the legal title was left in the trustee, while the equitable titles were in those for whom they were created. The active trust separated the legal from the equitable titles, as well in the life estate as in the remainder, but rendered the one no more contingent than the other. The contingencies which might have resulted in postponing the enjoyment or in diminishing the quantity of the property to pass to the remaindermen, resulted, not from the fact that the legal title was withheld from them, but by the possibility of the numerical enlargement of the class or the exercise of the power of disposal by the life tenant, neither of which affected the character of the remainder. In the period of time between the termination of the life estate and the specified ten years after

the youngest child came of age, where was the equitable title? It was in those for whose use and benefit the trustee held the legal title and to whom he was required to pay the rents. Then when the period of his active duties expired the Statute of Uses took the case in hand and he was discharged without being required to execute a deed transferring his legal title, the only thing required by him was to settle his accounts. That is in conformity to the language of the deed and also to the language of the statute.

We hold, therefore, that title in fee in remainder to an undivided one-fourth of the land was vested in John Henry Lauman in his lifetime, and he had a right to dispose of it by will as he did, and the plaintiff as his devisee is entitled to recover. The judgment ought to be reversed and the cause remanded to be retried according to the law as herein expressed. *Gantt* and *Woodson, JJ.,* concur in the views herein expressed; *Woodson, J.,* expresses his views on another point in a separate dissenting opinion.

## SEPARATE DISSENTING OPINION.

WOODSON, J.—I. I concur in all that has been said by Judge VALLIANT in the opinion filed by him in this cause; but in the view I take of the case it is wholly immaterial whether the grantees in the deed take a vested or a contingent remainder thereunder. In either event, in my opinion, the judgment should be reversed and the cause remanded, with permission granted to the parties interested to take such legal action as in their judgment they may deem proper, in order to secure or protect their rights to the real estate involved.

In my judgment the deed in question is clearly, upon its face, violative of the Statute of Perpetuities, and is consequently absolutely null and void for all

purposes whatsoever.  If that is true, then the deed conveyed no estate of any character to any of the grantees mentioned therein, but upon the contrary the grantors in the deed died, the owners of the land described therein, and it should be divided between their heirs-at-law according to the Statutes of Descent and Distribution.

II.  The third paragraph of the deed in question, in so far as it is material to the point I wish to suggest, reads as follows:

"Third:  From and after the death of said Catherina Lauman and the said John F. Lauman, the said party of the second part and his successors in trust, shall hold the real estate above described, or so much thereof as shall not have been disposed of as above provided, to the use, benefit and behoof, share and share alike, of the *children born or to be born* of the marriage of said John F. Lauman and Catherina Lauman, the children now living being named as follows, to-wit:  John Henry Lauman, born May 30th, 1854, Catherina Maria Alvina Lauman, born November 25th, 1863, John Frederick William Lauman, born November 11, 1867, Catherina Carolina Wilhelmina Lauman, born September 13th, 1869; and the said party of the second part, or his successors in trust, shall collect and receive all the rents, issues and profits . arising or accruing from said real estate, out of which he or they shall pay the taxes levied or assessed upon said real estate.  .  .  .

"At the expiration of ten years from and after the date when the youngest of said children shall have attained lawful age, the said trustee or his successor in trust, shall make a final settlement with each of said children, paying over to each of them then living, and to the *heirs at law of such of them as may have departed this life,* their respective equal shares as aforesaid, of the said rents and profits, and there-

upon this trust shall cease and be determined, and the title to said real estate and every part and portion thereof, not disposed of as hereinbefore provided, shall without any act to be done or performed by said trustee or his successor in trust, pass to and become fully vested in fee simple in said *children then living*, and in the *heirs at law of such of said children as may then be dead.*''

By reading the third clause of said deed it is seen that it expressly provides that the *unborn children* of the *unborn grantees* mentioned in the deed should take an interest in the real estate conveyed, provided a child should be born unto the grantors prior to their death, and provided further that said child had died leaving a child or other heirs surviving him at the time distribution was made of the real estate, described in the deed by the trustees, under the terms of the deed. That being true, and it appearing upon the face of the deed, it is clearly seen, without a shadow of doubt, that it was not only possible but highly probable that an unborn child of an unborn child might have taken an interest in said deed. In other words, if after the execution of the deed there had been born unto John F. Lauman and Catherina Lauman, his wife, the grantors in the deed, a child (whom for convenience we will call James Lauman), and if prior to said distribution James Lauman had died leaving surviving him a child or children (whom for convenience we will call Charles and Alfred Lauman), then in that case James, Charles and Alfred Lauman would have taken an interest in said real estate under the deed of the grantors who were the parents of James and the grandparents of Charles and Alfred Lauman, notwithstanding the fact that none of them were born at the time the deed was executed. Consequently, as before stated, the unborn child of an unborn child might have taken the title to the real estate in question, under the deed we are

asked to construe. That being unquestionably true, then the died is void and inoperative for any purpose, for the reason that it plainly and diametrically contravenes and does violence to both the letter and the spirit of the Statute of Perpetuities, which declares all instruments void which purport to convey real estate to the unborn child of an unborn child, or for a period of time beyond a life or lives in being, and twenty-one years thereafter, allowing the period of gestation in addition, of a child *en ventre sa mere,* who is to take under such a limitation.

This question came before Division One of this court in the recent case of Shepperd v. Fisher, 206 Mo. 208, and after a most exhaustive research and mature deliberation, the court said:

"Mr. Washburn lays down the rule of law against perpetuities in the following language: 'Still the policy of the law is against clogging the free alienation of estates, and, as will be shown hereafter, it has become an imperative, unyielding rule of law, first, that no estate can be given to the unborn child of an unborn child; and, second, that lands cannot be limited in any mode so as to be locked up from alienation beyond the period of a life or lives in being and twenty-one years after, allowing the period of gestation in addition of a child *en ventre sa mere,* who is to take under such a limitation.' [1 Washburn on Real Prop. (4 Ed.), p. 110, sec. 57.]

"SHERWOOD, J., quotes, with approval, the foregoing language of Mr. Washburn in the case of Lockridge v. Mace, 109 Mo. l. c. 166. In discussing this same question another eminent authority says: 'Perpetuities are grants of property, where the vesting of an estate or interest is unlawfully postponed; and they are called perpetuities, not because the grant, as written, would make them perpetual, but because they transgress the limits which the law has set in

restraint of grants that tend to a perpetual suspense of the title, or of its vesting; or, as is sometimes, with less accuracy, expressed, to a perpetual prevention of alienation.  It is any limitation tending to take the subject of it out of commerce for a longer period than a life or lives in being, and twenty-one years beyond; and in case of a posthumous child, a few months more, allowing for the term of gestation; or it is such a limitation of property as renders it unalienable beyond the period allowed by law.  The particular feature in limitations of future interests, with which the rule against perpetuities is connected, is the time of their vesting or, in other words, of their becoming interests transmissible to the representatives of the grantee, devisee or legatee, and disposable by him.' [Rice on Modern Law of Real Property, p. 755, sec. 270; Mifflin's Appeal, 121 Pa. St. 205.]

"Continuing, the same author, in the following section, says: 'It was always easy to determine where an executory devise contravenes the rule against perpetuities by this single inquiry, viz:  Is it possible that the event or contingency upon which the estate must vest, may not occur or happen within the prescribed period limited by the rule?  For if, by any possibility, the event might not happen within the time, the devise is obnoxious to the rule, and hence invalid. In all instances, under all circumstances, the contingency upon which the vesting of the estate hinges must be of such a character that it will infallibly occur sometime within the limit.'

"Mr. Rice lays down the true test of the legality of such limitations in the following language: 'In the application of this rule, in order to test the legality of a limitation, it is not sufficient that it be capable of taking effect within the prescribed period; it must be so framed as *ex necessitate* to take effect, if at all, within that time.  If, therefore, a limitation is made to depend upon an event which may happen immedi-

ately after the death of the testator, but which may not occur until after the lapse of the prescribed period, the limitation is void. The object of the rule is to prevent any limitation which may restrain the alienation of property beyond the precise period within which it must by law take effect. . . . The true test by which to ascertain whether a limitation over is void for remoteness, is very simple. It does not depend upon the character or nature of the contingency or event upon which it is to take effect. These may be varied to any extent. But it turns on the single question, whether the prescribed contingency or event may not arise until after the time allowed by law, within which the gift over must take effect.' [Rice on Modern Law of Real Property, p. 762, sec. 275.]

"The rule of law against perpetuities is not complicated nor difficult of understanding, but is like most rules of universal application—it is often found difficult in applying it to the facts of a particular case. But if the object of the rule is constantly borne in mind, and the kind of interests or estates which come under its operation, the proper application of the rule is very much simplified. The object of the rule, as before stated, is to leave the alienation or circulation of property free from all entanglements and other obstructions, so that it will freely pass and circulate in the channels of commerce, and the kind of the estates to which the rule applies are contingent remainders, conditional limitations, executory devises and springing and shifting uses. These interests or estates at common law were inalienable, because of their contingent nature. [2 Washburn on Real Property (4 Ed.), p. 591, sec. 6.]

"Such estates withdrew the landed property from the ordinary channels of commerce, its disposal and acquisition was rendered difficult, its improvement was

greatly retarded, the development of the country was stayed, and the capital of the country was gradually withdrawn from trade and circulation. In order to escape from that condition of things, the courts originated and developed and put in force the rule against perpetuities. It is a pure and simple judge-made law of extensive application, and in force in one form or other in every civilized nation on the globe, and stands inexorably against all efforts tending to impede or clog the channels of commerce.

"In the absence of statutes to the contrary, this rule never applies to vested remainders, because at common law they were always alienable and for that reason they never fall under the ban of the courts, or the displeasure of the lawmakers, except in recent years a few of the States have enacted statutes prohibiting the sale of vested remainders. In the States where those statutes exist, of course, the rule of perpetuities applies with equal reason and force to vested as it does to contingent remainders. [Rice on Modern Law of Real Property, pp. 755 to 764, secs. 270 to 276; Gray on Rule Against Perpetuities, p. 167, sec. 205; Washburn on Real Property (4 Ed.), p. 705, sec. 4.]"

In the Shepperd case, just quoted from, one clause of the deed there under consideration contained the identical vice pointed out in the deed involved in the case at bar, and in passing upon that identical question the court used this language:

"Such births are not only possible but highly probable, in fact, such a child has been born unto Susan Ellen Shepperd since the death of the testator. It is thus seen that the estate under the fifth clause of the will may not vest until the birth of an unborn child of an unborn child; and that under the sixth paragraph it cannot vest in fee in the child born since the death of the testator unto the said Susan Ellen Shepperd until it also has issue born, which will be

beyond the allotted time prescribed by the rule, because such issue would be the unborn issue of the unborn bodily heirs of said Susan Ellen Shepperd. [1 Washburn on Real Property (4 Ed.), p. 110, sec. 57; Rice on Modern Law of Real Property, pp. 761, 762, sec. 274; Lockridge v. Mace, 109 Mo. l. c. 166.]''

The fact that no child was born unto the grantors in the deed in question does not change the legal effect of the deed, for the reason that if it is possible for an unborn child of an unborn child to take under the deed, it is just as void as if such child had in fact been born, as was the fact in the Shepperd case.

The same question was presented to this court in the case of Bradford v. Blossom, 190 Mo. 110. The opinion in that case was written by BURGESS, J., and the court there held that a will which offended against the Statute of Perpetuities was void.

The same case came before the Court in Banc, and by a unanimous court the same doctrine was again announced therein. [Bradford v. Blossom, 207 Mo. 177.] Also to the same effect see: Heald v. Heald, 56 Md. 300; Donohue v. McNichol, 61 Pa. St. 73; Barnum v. Barnum, 26 Md. 119; Gray on Perpetuities (2 Ed.), secs. 369 to 382; Coggin's Appeal, 10 Am. St. 569; In re Walkerly, 49 Am. St. 136-7.

In fact all of the text-writers and adjudications of this country and of England enunciate the rule to be as stated in the case of Shepperd v. Fisher, supra; and I have been unable to find a single authority holding to the contrary on either side of the waters.

I am, therefore, clearly of the opinion that the deed in question is absolutely void upon its face, and that it conveyed no title whatever to any one.

III. It is contended that the validity of the deed is not questioned in this case.

That is true, and the opinion of Fox, J., filed herein, so states, but, as I view the case, that is wholly

immaterial, for the reason that the vice of the deed appears upon its face and should we hold it to be a valid deed, the clear effect of that ruling would be to overrule a long line of cases heretofore decided by this court, and wipe from the jurisprudence of this State the law against perpetuities, which is conceded by all to be one of the best and wisest laws extant, and which is in force in every civilized country on the globe. Not only that, but it would also set a bad example for conveyancers of real estate in the future and invite the execution of deeds and wills which cannot stand the legal test.

I am, therefore, of the opinion that the judgment should be reversed and the cause remanded for the purposes heretofore stated in paragraph one of this opinion.