POLLACK v. MEYER BROS. DRUG CO. et al.

(Circuit Court of Appeals, Eighth Circuit. May 4, 1916.)

No. 145.

*(Per Smith, Circuit Judge.)*

1. BANKRUPTCY ⬅➡417(4)—PLEADING—APPLICATION OF EQUITY RULES.

A court of bankruptcy is an equity court, and subject to new equity rule 29 (198 Fed. xxvi), abolishing demurrers in equity suits.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 871; Dec. Dig. ⬅➡417(4).]

2. PLEADING ⬅➡406(3)—DEMURRER—WAIVER BY PLEADING OVER.

The filing by a bankrupt of an answer to a petition by creditors to reopen the estate was a waiver of any error in a prior order overruling his demurrer, conceding that a demurrer could properly be entertained in such case.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1358; Dec. Dig. ⬅➡406(3); Action, Cent. Dig. § 564; Replevin, Cent. Dig. § 208.]

Sanborn, Circuit Judge, dissenting.

3. BANKRUPTCY ⬅➡417(4)—REOPENING ESTATE—HEARING BEFORE REFEREE.

On the hearing of a petition to reopen a bankrupt estate, the referee may properly take judicial notice of facts appearing in his own records of the original case.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 871; Dec. Dig. ⬅➡417(4).]

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. BANKRUPTCY ⊚⟳20(1)—PROPERTY PASSING TO TRUSTEE—FUND HELD IN TRUST.

That a fund in which a bankrupt had an interest was held in trust during the life of another by a trustee appointed by a state court did not deprive the court of bankruptcy of jurisdiction to administer such interest subject to the trust.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ⊚⟳20(1).]

5. BANKRUPTCY ⊚⟳30—SCHEDULES—PROPERTY TO BE INCLUDED.

Under the form for schedule prescribed by General Orders in Bankruptcy No. 38 (18 Sup. Ct. iv), which requires a bankrupt to report "property in reversion, remainder, or expectancy," it is his duty to schedule any interest he has in property, real or personal, either in remainder, vested or contingent, or in expectancy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 27–29; Dec. Dig. ⊚⟳30.]

Sanborn, Circuit Judge, dissenting.

*(Per Trieber, District Judge.)*

6. BANKRUPTCY ⊚⟳143(10)—PROPERTY PASSING TO TRUSTEE—TRANSFERABLE INTEREST.

Any interest of a bankrupt in property or a fund which he could by any means have transferred passes to his trustee, although it may not have been subject to seizure on execution against him.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 224; Dec. Dig. ⊚⟳143(10).]

7. BANKRUPTCY ⊚⟳143(1)—REMAINDERS ⊚⟳12—PROPERTY PASSING TO TRUSTEE—VESTED REMAINDER.

By decree of a state court a fund was placed in trust, the income to be paid to the mother of the bankrupt during her natural life, and any deficiency in the income below a sum sufficient to give her a reasonable and comfortable living to be made up out of the principal. On her death the remaining principal, after paying expenses of her last illness and funeral, was to be equally divided between her children named, of whom bankrupt was one. At the time of the bankruptcy the mother was still living and the principal of the fund was intact. *Held*, that bankrupt's interest in the fund was a vested remainder, which passed to his trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 204; Dec. Dig. ⊚⟳143(1); Remainders, Cent. Dig. § 3; Dec. Dig. ⊚⟳12.]

Sanborn, Circuit Judge, dissenting.

Petition to Revise Order of the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

In the matter of Joseph Pollack, bankrupt. Petition by the bankrupt to revise an order made on petition of the Meyer Bros. Drug Company and other creditors, reopening the estate. Order affirmed.

Benj. J. Klene, of St. Louis, Mo., and Charles B. Selby, of Oklahoma City, Okl., for petitioner.

Anthony F. Ittner, of St. Louis, Mo., for respondents.

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge.

SMITH, Circuit Judge. The petitioner, Joseph Pollack, on July 1, 1907, was, on his voluntary petition, adjudged a bankrupt by the District Court of the United States for the Eastern District of Missouri.

⊚⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A trustee was appointed, who took possession of the bankrupt's property as scheduled and converted it into cash and paid nearly 16 per cent. upon the claims proved and allowed. Among the claims so allowed were claims in favor of all the respondents. The estate was closed and the trustee discharged on June 2, 1908, and on September 14, 1908, the bankrupt was granted his final discharge. On September 24, 1913, the respondent filed a petition to reopen the matter, alleging that at the time of the bankruptcy the bankrupt had an interest in a one-ninth share in a trust fund of $18,000; that he failed to schedule said property, and the same was fraudulently concealed by the bankrupt, and the respondents failed to discover the facts until within a few days of the filing of the present application to reopen the bankrupt estate, and asking also that an injunction issue against the St. Louis Union Trust Company of St. Louis, Mo., trustee, restraining it from paying over to the said Joseph Pollack the interest in the said trust fund, or any part thereof, or in any other matter deposited or held in trust for the said Joseph Pollack, pending the further order of court. The court on the same day ordered the matter referred to Hon. Walter D. Coles, a referee in bankruptcy, with full power to reopen the said bankruptcy estate. The referee issued an order to Joseph Pollack and to the St. Louis Union Trust Company to appear and show cause why the orders prayed should not be granted. The petitioner appeared, and filed on October 6, 1913, a demurrer to the petition of the respondents which was overruled. He then filed a return and answer to the pending application, to which respondents filed reply. The case was heard upon the issues and the referee made the following order:

That he "doth find that the bankrupt, Joseph Pollack, at the time he filed his petition in bankruptcy, and was adjudicated a bankrupt, to wit, on July 1, 1907, had a vested title and interest, subject to the life estate therein of his mother, one Mary Pollack, in a certain trust fund held by the St. Louis Union Trust Company as trustee under a decree rendered by the circuit court of the city of St. Louis, state of Missouri, in the case of 'Mary Pollack, Plaintiff, v. Phillip Pollack, Joseph Pollack, et al., Defendants'; that said trust fund amounted to the sum of approximately $18,000, and that the said bankrupt was entitled, and is now entitled, to a one-ninth interest in said fund; that said bankrupt, at the time he filed his petition in bankruptcy, and was adjudicated a bankrupt, failed to schedule his interest in said trust fund, but knowingly and fraudulently concealed his interest therein from his creditors and his trustee in bankruptcy, for the purpose of preventing the said fund from being administered by his trustee under said bankruptcy; that the existence of said trust fund was not known to the trustee in bankruptcy of said bankrupt, or to his creditors, while the bankrupt estate was under administration in bankruptcy, and that said fund was not administered in the bankruptcy proceedings, and that knowledge of the existence of said trust fund was not acquired by the petitioners herein until shortly before the filing of their petition. The referee further finds that the interest of Mary Pollack, the mother of the bankrupt, in the trust fund before mentioned, has terminated by her death, and that the bankrupt's interest in said fund now amounts to approximately $2,000, and that the St. Louis Union Trust Company, trustee, is about to pay over to the bankrupt his interest in said fund. The referee further finds that the creditors of the bankrupt are entitled to have the bankrupt's interest in said trust fund administered in this bankruptcy proceeding, and the referee accordingly orders that the administration of the bankrupt estate of Joseph Pollack be, and the same is, hereby reopened for the purpose of administering the trust fund aforesaid, and for

any other proper and appropriate purpose; and it is further ordered that, until the further order of the referee, the St. Louis Union Trust Company, trustee, be, and it is, hereby restrained and enjoined from paying over to the bankrupt, Joseph Pollack, or in any other way disposing of the interest of said Joseph Pollack in and to the trust fund held by said trustee under the decree of the circuit court of the city of St. Louis entered in the case of 'Mary Pollack, Plaintiff, v. Phillip Pollack, Joseph Pollack, et al., Defendants'; and it is further ordered that a meeting of the creditors of said Joseph Pollack, bankrupt, be held at the office of the referee on December 2, 1913, at 11 o'clock in the forenoon, for the purpose of appointing a trustee and transacting such other business as may properly come before such meeting, and that due notice of said meeting be given to the creditors of said bankrupt as required by law."

Thereupon the bankrupt filed a petition for the review of said order by the United States District Court. The District Court upon hearing said application ordered:

"That the finding and order of the referee reopening said estate be and the same are in all things hereby approved and confirmed, and that the petition of said bankrupt for a review of the same be and the same is hereby denied and dismissed on the merits."

And this is a proceeding to revise the said order of the District Court. This was not an application to set aside the order of discharge under Bankr. Act July 1, 1898, c. 541, § 15, 30 Stat. 550 (Comp. St. 1913, § 9599), but was an application to reopen the estate under section 2, and particularly subdivision 8 thereof, which is as follows:

The courts of bankruptcy are hereby invested with such jurisdiction at law and in equity as will enable them to—

"(8) Close estates, whenever it appears that they have been fully administered, by approving the final accounts and discharging the trustees, and reopen them whenever it appears they were closed before being fully administered." Comp. St. 1913, § 9586.

[1, 2] The first point made here is that the referee erred in overruling the demurrer to the application to reopen the bankruptcy case. The court of bankruptcy is an equity court (section 2 of the Bankruptcy Act), and demurrers in such cases were abolished by rule 29 of the new equity rules, which became effective February 1, 1913, and this demurrer was not filed until October 6, 1913. It could have been well overruled on this ground. After the demurrer was overruled the bankrupt pleaded over in an answer which covers four pages of the printed record. Such action upon his part was a waiver of any error in the ruling on demurrer. Eau Claire National Bank v. Jackman, 204 U. S. 522, 535, 27 Sup. Ct. 391, 51 L. Ed. 596; Campbell v. Haverhill, 155 U. S. 610, 612, 15 Sup. Ct. 217, 39 L. Ed. 280; Stanton v. Embry, Adm'r, 93 U. S. 548, 553, 23 L. Ed. 983; Marshall v. Vicksburg, 15 Wall. 146, 149, 21 L. Ed. 121; Railroad Co. v. Harris, 12 Wall. 65, 84, 20 L. Ed. 354; Campbell v. Wilcox, 10 Wall. 421, 423, 19 L. Ed. 973; Watkins v. United States, 9 Wall. 759, 761, 19 L. Ed. 820; Young v. Martin, 8 Wall. 354, 357, 19 L. Ed. 418; Aurora City v. West, 7 Wall. 82, 92, 19 L. Ed. 42; Bell v. Railroad Co., 4 Wall. 598, 602, 18 L. Ed. 338; Clearwater v. Meredith, 1 Wall. 25, 42, 17 L. Ed. 604; United States v. Boyd, 5 How. 29, 50, 12 L. Ed. 36; Evans v. Gee, 11 Pet. 80, 85, 9 L. Ed. 639. But as Judge SANBORN, who dissents from this

opinion, thinks the petition stated a cause of action, and there was no error in overruling the demurrer, we will not consider this question further.

[**3**] Complaint is made that the referee took judicial notice of what the record showed in the original bankruptcy case. That was before the same referee, and there was certainly no error in his considering anything that appeared in the record in that case, as that was the same case in which the application was pending. The motion to strike parts of the report of the referee in the District Court was therefore without merit, and properly disregarded by the District Court.

It appears that prior to and in February, 1899, there was pending in the circuit court of the city of St. Louis a case entitled "Mary Pollack v. Phillip Pollack, Samuel Winter, Henry Pollack, Joseph Pollack, St. Louis Safe Deposit & Savings Bank, Charles Pollack, Martin Pollack, Hannah Goodman, Lotta Hart, Harrietta Freefield, and Lilly Drukker"; that in said action a decree was entered on March 6, 1899, that the court—

"doth find, that the ten (10) bonds of one thousand dollars each with coupons attached, issued by the city of Greenville, Texas, and the cashier's check issued by the St. Louis National Bank, dated December 7, 1896, for the sum of eight thousand dollars, payable on demand to the order of Phillip Pollack and by him indorsed in blank, mentioned in the pleadings, together constitute the capital of a trust fund which was on June 1, 1891, set aside and appointed by the defendant Phillip Pollack upon the following express trusts: The entire annual income and increase of said trust fund was appointed and appropriated by said Phillip Pollack to the use and for the support of his mother, the plaintiff, Mary Pollack, for the term and period of her natural life. The capital of said trust fund remaining at the death of said Mary Pollack was appointed and appropriated by said Phillip Pollack to be divided and distributed to Harrietta Freefield, Lilly Drukker, Hannah Goodman, Lotta Hart, Martin Pollack, Phillip Pollack, Henry Pollack, Charles Pollack, and Joseph Pollack, the children of the said Mary Pollack, in equal shares, and in full title discharge of said trust. And the court doth further find: That said trust was upon the further condition that the said Mary Pollack should receive a reasonable and comfortable support from said fund, and that if the necessity should arise, and the income at any time prove to be insufficient, that then resort might be had to the capital of said trust fund to supply such deficiency. That said trust fund was at the commencement of this suit, and is now, deposited in a safe deposit box in the vault of the defendant the St. Louis Safe Deposit & Savings Bank in the names of defendants Phillip Pollack, Samuel Winter, Henry Pollack, and Joseph Pollack as trustees for plaintiff, and custodians of said box, and its contents. That from June 1, 1891, to December 7, 1896, all the income of said trust fund was collected by the defendant Phillip Pollack, and has been fully and faithfully paid over and accounted for by him to the plaintiff, Mary Pollack, the beneficiary thereof, according to the terms and requirements of said trust. That from and after December 7, 1896, differences and disagreements arose among said trustees in regard to the management and investment of said trust fund, so that they were no longer able, and are not now able, to act in harmony in carrying out the purposes of said trust, and that their removal from their office as trustees has become necessary. The court further finds that the United States bond for the sum of one hundred dollars, with coupons attached, now in said safe deposit box, is not a part of the capital of said trust fund, but belongs to the plaintiff, Mary Pollack, and that the other papers, receipts, and vouchers now in said safe deposit box belong to the defendant Phillip Pollack. The court further finds from the evidence that the plaintiff, Mary Pollack, has failed in establishing the right and title claimed by

233 F.—55

her to the possession of said fund as her absolute property, and that she is not entitled to the relief prayed for in her amended petition.

"It is therefore ordered, adjudged, and decreed by the court: That said trust in said capital fund of eighteen thousand dollars, and the income thereof, be established and confirmed for the uses, to the persons, and upon the terms hereinabove found and declared. That the defendants Phillip Pollack, Samuel Winter, Henry Pollack, and Joseph Pollack be discharged and removed from their offices as trustees of said fund and shall recover nothing for their services as trustees. That the St. Louis Trust Company be and is hereby appointed sole trustee of said trust, to take possession of and hold said trust under the direction of this court, and to preserve, manage, invest, reinvest, collect, account for, and pay over the income and principal thereof at the times, to the persons, and in the proportions provided for in this decree. That the defendant the St. Louis Safe Deposit & Savings Bank and the said Phillip Pollack, Samuel Winter, Henry Pollack, and Joseph Pollack are ordered and directed, upon demand of the St. Louis Trust Company, to permit said trustee to open said safe deposit box, and to take possession of all the contents thereof. That said St. Louis Trust Company, after taking possession of said property as trustee, shall deliver to the plaintiff, Mary Pollack, upon demand, the United States bond for one hundred dollars, with its coupons attached, taking her receipt therefor, and shall deliver to the defendant Phillip Pollack, on demand, the other papers, receipts, and vouchers found in said box, taking his receipt therefor. That said St. Louis Trust Company, as trustee, shall take into its possession and· hold the ten bonds, for one thousand dollars each, with· coupons attached, issued by the city of Greenville, Texas, together with said cashier's check for eight thousand dollars, as the principal of said trust fund. That said trustee shall collect and invest and keep invested said sum of eight thousand dollars upon good security, and shall collect and pay over to the plaintiff, Mary Pollack, taking her receipt therefor, the entire net income from said bonds and money, in monthly installments of not less than seventy-five dollars each, payable on the first day of each calendar month, as long as she shall live. If at any time the net income from said trust· fund shall be insufficient to pay said monthly payments as they fall due, then said trustee may take from and pay over to said Mary Pollack such sum from the principal fund as may be necessary to make up the deficiency of the income. The court reserves the right upon motion in this cause of the plaintiff or of the trustee from time to time to order the payment of such further sums to plaintiff out of the principal of said trust estate as the court may deem necessary to pay for plaintiff's necessaries, maintenance, and support, and such order shall be made upon such notice to the parties interested in the fund as the court may require. Upon the death of the said Mary Pollack said trustee is ordered and directed to pay the expenses of her last illness and funeral, and to also expend a reasonable sum, not exceeding two hundred dollars, for a monument at her grave, and is then ordered and directed to pay over the balance of the principal fund, and unexpended income, if any, to the defendants Phillip Pollack, Henry Pollack, Joseph Pollack, Charles Pollack, Martin Pollack, Hannah Goodman, Lotta Hart, Harrietta Freefield, and Lilly Drukker, or their heirs or legal representatives, in equal shares, discharged of this trust, and said trustee may sell any securities on hand for such purpose."

Subsequent to that decree, and before the filing of the application to reopen this case, the said Mary Pollack departed this life. It will be observed that in the decree—

"the court further finds from the evidence that the plaintiff, Mary Pollack, has failed in establishing the right and title claimed by her to the possession of said fund as her absolute property, and that she is not entitled to the relief prayed for in her amended petition."

In Mr. Pollack's schedules filed with his petition in voluntary bankruptcy he did not enumerate any interest in the trust funds referred

to in the state court case, and if such interest should have been reported the failure to report it was a concealment, and as it appears that at least a portion of the respondents had never heard of his having any interest under the decree until a few days before their application was made to reopen the case, the action of the court below should be sustained; that is, the sole question is whether he had such interest in the trust fund as should have been scheduled by him.

[4] It is strenuously contended that the property was in custodia legis. As already stated a bankruptcy court is a court of equity. The fact that this property could not be reached by execution has no force, as the court in which the proceeding was pending is clothed with full equity powers. It may for the purposes of this case be conceded that a bankruptcy court would not, under the circumstances, have interfered with the possession of the state court of the property until it had disposed of the trust under which it was held; but when the court which had obtained possession had completed the execution of its powers the bankruptcy court was entitled to the possession of the balance undisposed of. Carling v. Seymour Lumber Co., 51 C. C. A. 1, 113 Fed. 483. The writ of certiorari was denied in this case by the Supreme Court May 5, 1902. 186 U. S. 484, 22 Sup. Ct. 943, 46 L. Ed. 1261; In re English, 62 C. C. A. 572, 127 Fed. 940.

[5] There has been elaborate discussion as to whether the interest of Pollack, the bankrupt, in this fund, was a vested or a contingent remainder. Some confusion exists from the attempt to apply legal terms having their primary application to real estate to personal property.

"The term 'estate' is properly applicable only to real property. * * * While, however, the term 'estate,' in its original and proper use, applies only to real property, it is frequently employed to designate personal property." Smith on Personal Property, 24 and 25. "Contrary to the ancient common-law doctrine, it is now well established that there may be an interest in expectancy in personal property." Id. 27.

But the order as to the schedules is that the bankrupt must report property in reversion, remainder, or expectancy. The form does not distinguish between vested and contingent remainders, but it requires the listing of an interest in both realty and personalty in remainder or in expectancy.

November 28, 1898, the Supreme Court adopted the General Orders and Forms in Bankruptcy. 172 U. S. 653, 18 Sup. Ct. iv. By General Order No. 38 the forms were especially adopted. By form 3, schedule B (4), headed "Property in Reversion, Remainder or Expectancy," the bankrupt is required to report such property. What was meant by the word "expectancy," and does it include the property here in question? In Pearsall v. Great Northern Railway Co., 161 U. S. 646, on page 673, 16 Sup. Ct. 705, on page 713 (40 L. Ed. 838), the Supreme Court had said:

"A vested right is defined by Fearne, in his work upon Contingent Remainders, as 'an immediate fixed right of present or future enjoyment,' and by Chancellor Kent as 'an immediate right of present enjoyment, or a present fixed right of future enjoyment.' 4 Kent, Com. 202. It is said by Mr. Justice Cooley that 'rights are vested, in contradistinction to being expectant

or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. They are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent, when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting.' Principles of Const. Law, 332."

Eight of the Supreme Judges who rendered that decision were still on the Supreme bench when General Orders in Bankruptcy were promulgated. The only change in the court was the appointment of Mr. Justice McKenna in lieu of Mr. Justice Field. It is scarcely within the range of possibility that all the eight Judges who concurred or dissented in Pearsall v. Great Northern Railway, and least of all that Mr. Justice Brown, who wrote the opinion of the court, had, when they used the word "expectancy" in the General Orders and Forms, forgotten what they said in the Pearsall Case as to its meaning. It is not unusual to require a report of property which cannot be utilized by the trustee. For example, a bankrupt is required to report all the property which he claims is exempt, although all that can be done with it is to set it off to him. Again, he is required to report what portion of the bankrupt estate has passed under assignment for benefit of creditors, although, if it was more than four months before the bankruptcy, it cannot be recovered by the trustee. Other provisions might be cited, but this is sufficient for our purpose. In other words, the rule requires the reporting of much property that may or may not be held by the trustee that the courts may determine its liability for the payment of debts. Such determination is a part of the administration of the estate. Bearing this in mind, the rules required the bankrupt to report any interest he had in remainder, vested or contingent, or in expectancy, and that he had an interest either in remainder or in expectancy in this state court trust is beyond dispute.

If a trustee be now appointed, it will be his duty to apply to the state court for this fund, and if it refuses to turn it over to then apply to the United States District Court for an order. Carling v. Seymour Lumber Co., supra. It will be for those courts to then determine the exact nature of the interest held by Pollack in the fund, and it would be improper for this court to prejudge that matter for either state or federal court. Revised Statutes, § 720, provides:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

Under this section the court was clearly right in granting the injunction in this case. Without either approving or disapproving the special finding of the referee that Pollack had a vested interest in remainder in the trust fund in question, he was clearly bound to report it in his schedules, in place of reporting, as he did, that he had no such interest, and it was clearly, not only within the power of the court, but it was its duty, to reopen this case, because it appears it was "closed before being fully administered"; and the petition to revise is denied.

TRIEBER, District Judge (concurring). As all of us concur that the demurrer to the petition to reopen the bankruptcy proceedings was properly overruled, I do not deem it necessary to pass on the question whether the petitioner, by filing an answer after his demurrer had been overruled, waived any error in the ruling on the demurrer, and therefore do not concur in what is stated on that point by Judge SMITH.

[6] The fact whether a fund or any other property of the bankrupt is subject to seizure under execution at the time bankruptcy proceedings are instituted against him is not the test whether the interest of the bankrupt in the fund or property passes to the trustee. Under section 70a(5) of the Bankruptcy Act (Comp. St. 1913, § 9654), all property, which prior to the filing of the petition he could by any means have transferred, passes to the trustee. As stated in Re Wright, 157 Fed. 544, 85 C. C. A. 206, 18 L. R. A. (N. S.) 193:

"If they are property which can by any means be transferred, the creditors of the bankrupt are entitled to the benefit of them, however little they may bring. Marketability and assignability are quite distinct."

There are many equitable interests which, if owned by the bankrupt, may be of value and increase the assets of the estate, and yet not be subject to seizure on execution; but, being transferable, they will pass to the trustee. Thus it has been held that a seat on the Stock Exchange, which can only be transferred with the consent of the officers of the Exchange, will pass to the trustee, if it has a value. Page v. Edmunds, 187 U. S. 596, 601, 23 Sup. Ct. 200, 47 L. Ed. 318. A liquor license, if of any value and transferable, although it requires the consent of some official board, will pass to the trustee. Fisher v. Cushman, 103 Fed. 860, 43 C. C. A. 381, 51 L. R. A. 292. Life insurance policies payable to some other person, but with the right of the bankrupt to change the beneficiary, and endowment or tontine policies payable to the bankrupt, if living when it matures, but in case of his death to some member of his family, have all been held to pass to the trustee of the bankrupt. In re Coleman, 136 Fed. 818, 69 C. C. A. 496; In re White, 174 Fed. 333, 98 C. C. A. 205, 26 L. R. A. (N. S.) 451; In re Orear, 178 Fed. 632, 102 C. C. A. 78, 30 L. R. A. (N. S.) 990. That vested remainders pass to the trustee seems to me beyond question. In re Arden (D. C.) 188 Fed. 475.

[7] The question for determination, therefore, is whether the bankrupt's interest in the trust fund as created by the decree of the circuit court for the city of St. Louis, and set out in the opinion of Judge SMITH, was a vested remainder. In Doe v. Considine, 6 Wall. 474, 18 L. Ed. 869, the court defines vested and contingent remainders as follows:

"The vested remainder is where a present interest passes to a certain and defined person but to be enjoyed in futuro. There must be a particular estate to support it. The remainder must pass out of the grantor at the creation of the particular estate. It must vest in the grantee during the continuance of the estate, eo instante that it determines. A contingent remainder is where the estate in remainder is limited either to a dubious or uncertain person, or upon the happening of a dubious or uncertain event."

See, also, Johnson v. Washington L. & T. Co., 224 U. S. 225, 237, 238, 32 Sup. Ct. 421, 56 L. Ed. 741.

And this is the rule established by the Supreme Court of Missouri. Collier's Will, 40 Mo. 287; Buxton v. Kroeger, 219 Mo. 224, 117 S. W. 1147. Fearne on Remainders lays down the rule to be that:

"The uncertainty of remainders ever taking effect in possession does not make the remainder contingent, if in other respects it has the essential requisites of a vested remainder."

On page 216 the same author says:

"It is not the uncertainty of ever taking effect in possession that makes a remainder contingent, for to that every remainder for life on entail must be liable, as the remaindermen may die, or die without issue before the death of the tenant for life. The present capacity of taking effect in possession, if the possession is to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determined, universally distinguishes a vested remainder from one that is contingent."

See also Ætna Life Insurance Co. v. Hoppin, 214 Fed. 928, 131 C. C. A. 224.

The fact that the trustee is authorized to pay a greater sum to the mother than $900 per annum, if it becomes necessary, and that he is to pay the cost of her last illness, burial, and for a monument over her grave, at a cost not to exceed $200, does not make the estate contingent, although it is uncertain what amount there will be for distribution among the remaindermen, but not uncertain as to who is to participate in the distribution, though the amount be uncertain.

The fund consisted of $18,000. Invested at 5 per cent., the income would be $900 per annum; but, if the trustee should find an investment at a higher rate, it would produce a greater income than the $900 provided for. On the other hand, if the investment is at less than 5 per cent., it would produce a smaller sum than the $900, and would necessitate the use of some of the principal. If these facts would make a remainder contingent, then very few would be vested. A testator may leave a large fund to trustees to be held in trust for the suitable maintenance of the widow, and for the maintenance and education of the children, and after the widow's death the fund to be divided among his children. What a suitable allowance to the widow and the maintenance and education of the children will cost is uncertain, and no one can tell what the fund will amount to when the distribution is made, but this would not make the ultimate remainder contingent.

The New York cases relied on are not in point. In Hobson v. Hale, 95 N. Y. 588, the language used in the will was that until the time of the death of the last annuitant the donees could not be ascertained, as it was to be "divided among my grandchildren per stirpes," and the court held that, as it could not be ascertained how many grandchildren would be then living, the remainder was contingent. In Vincent v. Newhouse, 83 N. Y. 505, the testator bequeathed certain lands to his wife for life, and at her death the executor was directed to sell the lands and divide the proceeds among three of his children and the children of others, share and share alike, and it was held that until the land

was converted into money the subject-matter of the devise did not exist, and there could therefore be no vested remainder. In Shipman v. Rollins, 98 N. Y. 311, the facts were like those in Vincent v. Newhouse, and the same conclusion was reached.

Remainders can only take effect on the happening of a certain event, usually the demise of the life tenant, or first taker, and, if this makes them contingent, there would never be any vested remainders. In this case the decree, establishing the rights of the parties, specifically provides that upon the death of Mary Pollack the trustee is to pay the expenses of her last illness, the funeral expenses, and a reasonable sum, not exceeding $200, for a monument at her grave, and pay over the balance of the principal fund and unexpended income to the nine children named, in equal shares; the bankrupt being one of them. This, in my opinion, created vested remainders to the fund in the hands of the trustee.

The petition to revise should be denied.

SANBORN, Circuit Judge (dissenting). I am unable to concur in the opinion of the majority in this case for the following reasons:

First. The opinion states that, because the bankrupt answered over after the overruling of his demurrer to the creditors' petition to open the proceedings in bankruptcy, he waived his demurrer, as though it were the universal rule that pleading over after the overruling of a demurrer waived the objection raised by it, and deprived the defeated party of the right to review in a federal appellate court the ruling upon the demurrer. This statement seems to me to be liable to mislead those who read the opinion, unless the general rule which prevails in the federal courts upon the subject of the review of an order overruling a general demurrer to a pleading is clearly stated. In suits in equity in the courts of the United States one who demurs to a pleading has the right under the rules and practice in equity, after challenging the sufficiency of the pleading, to answer it. Files v. Brown, 124 Fed. 133, 142, 59 C. C. A. 403, 412, and cases there cited. And the rule upon the subject of the right to review the order of the court overruling the demurrer is, in the words of the Supreme Court, that:

"When the declaration fails to state a cause of action, and clearly shows that upon the case as stated the plaintiff cannot recover, and the demurrer of the defendant thereto is overruled, he may answer upon leave and go to trial without losing the right to have the judgment upon the verdict reviewed for the error in overruling the demurrer. The error is not waived by answer, nor is it cured by verdict. The question, therefor, whether the complaint in this case states facts sufficient to constitute a cause of action, is open for consideration." Teal v. Walker, 111 U. S. 242, 246, 4 Sup. Ct. 240, 28 L. Ed. 415; Bauserman v. Blunt, 147 U. S. 647, 652, 13 Sup. Ct. 466, 37 L. Ed. 316; Southern Pacific Co. v. Denton, 146 U. S. 202, 206, 13 Sup. Ct. 44, 36 L. Ed. 942; Hudson Canal Co. v. Penna. Coal Co., 8 Wall. (75 U. S.) 276, 287, 19 L. Ed. 349; In re Atlantic City Railroad, 164 U. S. 633, 635, 17 Sup. Ct. 208, 41 L. Ed. 579.

While the practice relative to this matter in the state courts is not controlling or material upon this question of practice in the federal courts, it is interesting to note a learned and exhaustive opinion by the Supreme Court of Wyoming setting forth persuasive reasons for this

rule in Grover Irrigation & Land Co. v. Lovella Drainage, etc., Co., 21 Wyo. 204, 131 Pac. 43, 50, 51, 52, Ann. Cas. 1915D, 1207.

In the year 1914 this question was considered and decided by this court, after consultation of the authorities cited in the opinion of the majority in this case, and the rule stated in Teal v. Walker, which had theretofore been followed in this court, was adhered to. Citing Teal v. Walker the court stated the rule in these words:

"If the petition, as challenged by the demurrer, is fatally defective in substance, and clearly shows that upon the case as stated the plaintiff cannot recover, the judgment must be reversed; otherwise, it should be affirmed." City of Harper, Kansas, v. Daniels, 211 Fed. 57, 60, 129 C. C. A. 242, 245; Rush v. Newman, 58 Fed. 158, 161, 7 C. C. A. 136, 139.

This is the rule which prevails in the Seventh and Ninth circuits. City of Pontiac v. Talbot Pav. Co., 94 Fed. 65, 67, 36 C. C. A. 88, 90, 48 L. R. A. 326; Mitsui v. St. Paul Fire & Marine Ins. Co., 202 Fed. 26, 28, 29, 120 C. C. A. 280, 282, 283.

In City of Harper v. Daniels it was suggested by the learned writer of the majority opinion in this case that the laws of Kansas in which that suit arose warranted the ruling in that case by virtue of the act of conformity. It is suggested, however, under favor, that the question whether answering over upon the overruling of a demurrer deprives a party of his right to review that ruling in the federal appellate courts is a question of the practice of those courts, and that the power and practice of the national appellate courts and their means of reviewing the judgments and rulings of the District Courts are neither conditioned, affected, nor controlled by the statutes of the states, the practice of their courts, or the act of conformity. The act of conformity (section 914 of the Revised Statutes [Comp. St. 1913, § 1537]) is limited by its express terms to the practice and proceedings in the Circuit and District Courts. It has no application to the practice or proceedings of the national appellate courts, or to matters relating to bills of exceptions, motions for new trials, or any other means adopted to review the judgments of the United States District Courts. The power and practice of the United States appellate courts are derived exclusively from the Constitution, the acts of Congress, the common law, the ancient English statutes, and the rules and practice of the federal courts. The statutes and the practice of the courts of Kansas, it seems to me, could neither give to nor take away from the national appellate courts the power or duty to review a ruling of a United States District Court upon a demurrer after an answer over. Chateaugay Iron Co., Petitioner, 128 U. S. 544, 554, 555, 9 Sup. Ct. 150, 32 L. Ed. 508; Hudson v. Parker, 156 U. S. 277, 281, 15 Sup. Ct. 450, 39 L. Ed. 424; St. Clair v. United States, 154 U. S. 134, 153, 14 Sup. Ct. 1002, 38 L. Ed. 936; Nalle v. Oyster, 230 U. S. 165, 167, 33 Sup. Ct. 1043, 57 L. Ed. 1439; Ghost v. United States, 168 Fed. 841, 843, 94 C. C. A. 253, 255; Francisco v. Chicago & A. Ry. Co., 149 Fed. 354, 359, 79 C. C. A. 292, 297, 9 Ann. Cas. 628, and cases there cited.

Turning again to the rule, of course, if a defendant, after a demurrer to a defective complaint, answers over, and in his answer himself pleads, and thereby admits, facts which, read together with the al-

legations of the complaint, constitute a good cause of action, as in Eau Claire National Bank v. Jackman, 204 U. S. 522, 535, 27 Sup. Ct. 391, 51 L. Ed. 596, where the defect was the lack of an averment of a demand, and the defendant set forth in his answer facts which rendered a demand unnecessary, or if the case is one in which the defect in the complaint is not substantial, if, notwithstanding the defect, the complaint fairly and substantially states a good cause of action, the rule in Teal v. Walker is inapplicable. But the rule stated in that case and quoted above, as it seems to me, prevails in this court, in the Supreme Court, in the Courts of Appeals of the Seventh and Ninth Circuits, and, so far as I am aware, in the other appellate courts of the United States.

When, however, we turn from this rule of practice and examine the petition for the opening of the bankruptcy proceedings, that pleading clearly states a good cause for the opening. It pleads that the bankrupt had a complete vested title in remainder worth $2,000 in trust funds and securities which he did not mention in his bankruptcy proceeding, but which he fraudulently concealed, with intent to hinder, delay, and defraud his creditors, and that the petitioners were ignorant of these facts until a few days before they filed their petition to open the proceedings. Because the petition alleged facts sufficient, if true, to entitle the creditors to open the proceedings and to have an administration of the bankrupt's interest in the vested remainder which the petition stated he had in the securities, there was no error in overruling the demurrer.

Second. When, however, the facts were disclosed upon the hearing before the referee and the court, it clearly appeared, in my opinion, that the bankrupt never had any vested title, right, or remainder in the trust funds or securities mentioned at any time while the administration of his estate in bankruptcy was pending, or at any time before the death of Mary Pollack on July 6, 1913. The petition for the adjudication in bankruptcy was filed and the adjudication was made on July 1, 1907. The administration of the estate in bankruptcy was closed on June 2, 1908. The bankrupt was discharged on September 14, 1908. During all the time between 1899 and the death of Mary Pollack in 1913, the securities that occasioned this litigation, which were in 1899 worth about $18,000, were held by the St. Louis Trust Company under the decree of a state court, in trust to pay to Mary Pollack the entire net income thereof and as much of the principal as should be required to pay for her comfortable maintenance and support during her life, and upon her death to pay the expenses of her last sickness and a sum not exceeding $200 for a monument at her grave, and then to sell the securities and distribute the balance, if any, to Phillip Pollack, Henry Pollack, Joseph Pollack, the bankrupt, Charles Pollack, Martin Pollack, Hannah Goodman, Lotta Hart, Harrietta Freefield, and Lilly Drukker, their heirs or legal representatives, in equal shares. The interest of Joseph Pollack, therefore, during the bankruptcy, and at all times before the death of Mary Pollack, as it seems to me, was not vested, but was contingent, not only as to its amount, but as to the existence and enjoyment of any interest what-

ever, upon the failure of the trustees to expend the entire trust prop-' erty before the death of Mary Pollack, as they were empowered to do, for her comfortable maintenance and support.

Whether that right was vested or contingent will be considered more at length later. If it was contingent, and not vested at the filing of the petition in bankruptcy and during the pendency of the proceedings therein, then Joseph Pollack could not, prior to the filing of the petition in bankruptcy, by any means have transferred it, nor could it have been levied upon or sold under judicial process against him. Section 70 of the Bankruptcy Law. The trustee in bankruptcy had no claim to or upon it, and neither he nor the creditors can now recover anything on account of it, because it did not vest in Pollack, the bankrupt, or become his property so as to be subject to administration in bankruptcy until Mary Pollack died, more than five years after the petition in bankruptcy was filed and more than four years after the bankruptcy proceedings were closed. A contingent right or remainder is not transferable by the remainderman or leviable upon execution against him. Lucas v. McNeill, 231 Fed. 672, —— C. C. A. —— (C. C. A. 8th Circuit, opinion filed February 24, 1916); Ætna Life Ins. Co. v. Hoppin, 214 Fed. 928, 931, 131 C. C. A. 224, 227, and cases there cited.

Now the question whether or not there was an error of law in the action of the referee and of the lower court in ordering an opening of the bankruptcy proceeding and an administration of this interest depends entirely upon the true answer to the question whether Joseph Pollack had a vested or a contingent interest in the trust property when the petition in bankruptcy was filed against him. If he had the former, the orders were right; if only the latter, they were wrong, and the petition of the creditors should have been dismissed. If that interest was only a contingent interest when the petition for the adjudication in bankruptcy was filed, the petitioning creditors can never recover or administer it, or any interest in the trust property that subsequently vested in Joseph Pollack, and they can derive no benefit from this proceeding. If that interest was contingent when the petition for the adjudication was filed, the opening of the bankruptcy proceeding would be futile, its only effect would be to prolong litigation, to increase the expense of the litigants and to delay an adjudication which the record clearly presents to the court now.

For this reason it is immaterial whether or not Joseph Pollack was required by the Bankruptcy Law to disclose in his petition in bankruptcy, or in his schedules, the interest he had in the trust fund in question. If he was, and if that interest was contingent, the petitioning creditors can never have any relief by this proceeding; and if he was not, and that interest was contingent, the result is the same. If creditors should apply to open bankruptcy proceedings and to administer the homestead of a bankrupt, which was clearly exempt, because he did not describe it in his petition or schedules as required by the Bankruptcy Law, no court would fail to dismiss the petition because it could grant no substantial relief by opening the proceedings.

So here, even if Joseph Pollack was required to describe or schedule his interest in the trust property, yet if the only interest he had was contingent, and hence not subject to administration or application in bankruptcy to the payment of his debts, the petition of his creditors to open the bankruptcy proceedings and attempt to administer that interest should have been denied, because no court could grant the petitioning creditors any beneficial relief by such an opening and attempted administration. A court of equity will not foster or conduct futile proceedings, when the record clearly shows that there is no possibility that they can result in any benefit to any one.

The result is that the crucial question in this case is whether the interest of Joseph Pollack was vested or contingent when he filed his petition for an adjudication in bankruptcy in 1907. Let us turn to that question. Measure his right by the definition cited in the majority opinion from Pearsall v. Great Northern Railway, 161 U. S. 646, 673, 16 Sup. Ct. 705, 713 [40 L. Ed. 838]. A vested right is "an immediate fixed right of present or future enjoyment"; or, as Chancellor Kent puts it, "An immediate right of present enjoyment, or a present fixed right of future enjoyment." The right of Joseph Pollack was none of these. In 1907 or 1908 it was not an immediate right of present enjoyment, for it could not be enjoyed until after the death of Mary Pollack, and she was living. It was not a present fixed right of future enjoyment, for it was not fixed, certain; it was subject to change, to destruction. The trustee might diminish the principal, it might expend all the principal and all the income of the trust property in the maintenance and support of Mary Pollack before she should die, so that Joseph's right to enjoy anything under the trust would never arise. Take Justice Cooley's definition:

"Rights are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. They are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting."

The right of Joseph Pollack was not vested in 1907 and 1908, because no right to enjoy in the then present or future any part of the trust was then his property. If it had been, he could by legal proceedings have prevented the loss or destruction of that property by the trustee by means of the expenditure of the trust fund to maintain or support Mary Pollack. It was not an expectant interest, because it did not depend upon the continuance of the then present condition of things until the happening of some future event, in this case the death of Mary Pollack, for, although the then present condition of things had continued until her death, still the trustee might, under that condition of things, have expended all or any part of the principal and income of the fund for her maintenance and support before that death, and thus have destroyed any possible interest of Joseph. It was a contingent right, because it was only to come into

existence on an event, the death of Mary Pollack, which might not happen until some other event, the expenditure of all the principal and income of the trust fund for the support and maintenance of Mary Pollack, had prevented its vesting.

On March 6, 1899, when by decree of the circuit court of Missouri the title to the trust property was vested in St. Louis Trust Company, as trustee, it consisted of 10 bonds of $1,000 each, and a cashier's check for $8,000. By the decree the trust company was made the trustee of this property to "invest, reinvest, collect, account for, and pay over" the income thereof and such portions of the principal thereof as should be necessary for the maintenance and support of Mary Pollack until her death, and to pay for her last sickness and monument, and when all these payments had been made to sell any securities on hand, if necessary to make the distribution, and to pay over the remainder, if any, to the nine remaindermen, of which the bankrupt was one. As it was the duty of the trustee to keep the property in income-bearing securities, the legal presumption, and, as there is no evidence on the subject, the unavoidable conclusion, is that at the time of and during the pendency of the bankruptcy proceedings, as well as at the conclusion of the payments for the funeral expenses and the monument, the trust property was in such securities, and it was clear from the adjudication of the trust that under it, it would be and it was necessary for the trustee to convert the securities into money to raise the necessary fund to make a distribution among the remaindermen.

It is contended that the will and the decree which is based upon it vested remainders in the nine remaindermen, vested an absolute property right in Joseph Pollack, although it was uncertain whether or not there would be any remainder whatever of the trust property after the trustee paid the prior charges; and in support of this conclusion In re Arden (D. C.) 188 Fed. 475, Doe v. Considine, 6 Wall. 458, 473, 18 L. Ed. 869, Johnson v. Washington Loan & Trust Co., 224 U. S. 224, 237, 32 Sup. Ct. 421, 56 L. Ed. 741, Collier's Will, 40 Mo. 287, 300, Buxton v. Kroeger, 219 Mo. 224, 117 S. W. 1147, and other cases are cited. A careful reading and examination of these cases will show, however, that they all relate to devises of and trusts in real estate, while the trust here relates to personal property. They are distinguishable from this case by the decisive fact that it was certain in each of them that under the devise or trust the enjoyment of some valuable interest must eventually come to the remainderman, or his heirs or assigns, while in the case at bar it was uncertain during the pendency of the bankruptcy proceedings and until the death of Mary Pollack whether or not the enjoyment of any interest whatever would ever come to Joseph Pollack, his heirs or assigns. That enjoyment was always contingent upon the issue whether or not the trustee should expend the entire trust fund, as it had the right to do, for the comfortable support and maintenance of Mary Pollack. For that reason Joseph Pollack's remainder or right was, in my opinion, not vested. It was contingent. He had no property or property right in the trust fund which he could enforce before the

death of Mary Pollack. He could not prevent the expenditure of the entire trust fund for the purposes stated in the trust before her death, so that the enjoyment of nothing would come to him. Hence he could not have conveyed or transferred any interest in the fund, and if he had attempted to do so, and had subsequently died before the death of Mary Pollack, his grantee would have taken nothing, and his interest, on her death, if there were any, would have gone to his heirs. Shipman v. Rollins, 98 N. Y. 311, 322, 325; Vincent v. Newhouse, 83 N. Y. 505; Warner v. Durant, 76 N. Y. 133, 136; Smith v. Edwards, 88 N. Y. 92, 104; Hobson v. Hale, 95 N. Y. 588, 596, 615; Bristol v. Atwater, 50 Conn. 402, 407, 409, 410; In re Hoadley & Munroe (D. C.) 101 Fed. 233, 3 Am. Bankr. R. 780, 783, 784, 786, 787, and cases there cited; Ernst v. Foster, 58 Kan. 438, 443, 49 Pac. 527; McNutt v. McComb, 61 Kan. 25, 58 Pac. 965; Greenwalt v. Keller, 75 Kan. 578, 90 Pac. 233; Bullock v. Wiltberger, 92 Kan. 904, 142 Pac. 950; Ætna Life Ins. Co. v. Hoppin, 214 Fed. 928, 933, 131 C. C. A. 224, 229; Lucas v. McNeill, 231 Fed. 672, —— C. C. A. —— (C. C. A. 8th Circuit, opinion filed February 24, 1916).

Bearing in mind the fact that until the death of Mary Pollack the remainder of Joseph Pollack was uncertain, not only as to amount, but as to enjoyment and existence, that it might be more or less, and it might be nothing, contingent entirely upon the income the trustee derived from the trust and the amount it expended for the comfortable support of Mary Pollack, the case of Shipman v. Rollins exactly rules the question here at issue. In that case the testator devised the use of one piece of his real estate to his widow for life, empowered his executors to sell at once so much of his other real estate as should be sufficient to produce, by investing it in bonds and mortgages, an annuity of $1,500, which was to be paid to the widow during her life, the testator authorized them to sell any portion of his real estate necessary to pay taxes, assessments, and other exigencies during the life of the widow, and directed them to sell, after her death, what remained of the real estate, to add the proceeds to the amount invested to produce the annuity, to pay from the amount thus produced his funeral expenses, mortgages, and debts, and to distribute the balance equally among eight named legatees. The question was whether or not these legacies were vested or contingent before the death of the widow, and the Court of Appeals of New York held that they were contingent. It said (98 N. Y. 325):

"It should be borne in mind that the fund out of which the legacies in question were to be paid had no legal existence until the decease of the testator's widow. It was upon the happening of that event that it was to be created, and it was only then that it could be ascertained what the fund would be. It might be more or less, according to the exigencies provided for by the will, and it might be nothing, and it was only in case a balance remained that the same was to be divided as directed. It was then to be disposed of or given away, and not before that time. * * * In Vincent v. Newhouse, 83 N. Y. 505, the testator, by his will, gave certain lands to his wife for life and directed that at her death the lands should be sold by the executor, and the proceeds equally divided among three of his children named, and the children of three others, share and share alike, and if either of the

heirs mentioned should die after the date of his will, and before their shares were paid them, the share of the one so dying without issue to be equally divided among the other heirs before named, and it was held that the will intended a conversion of the land into money, the actual conversion, however, not to take place until the termination of the life estate, and that the land was converted into money from the time the sale was directed to be made, and that no portion of the remainder vested at the death of the testator, but only upon the death of the widow."

In Warner v. Durant, 76 N. Y. at page 136, that court declares that the rule is that:

"Where there is no gift, but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiary will not take place until that time arrives."

In Ætna Life Ins. Co. v. Hoppin, 214 Fed. 928, 933, 131 C. C. A. 224, 229, the Circuit Court of Appeals of the Seventh Circuit declared, and this court approvingly followed that declaration in Lucas v. McNeill, supra:

"That a remainder is vested when throughout its existence it stands ready to take effect in possession, whenever and however the preceding estate determines. A remainder is contingent when it is limited on an event which may happen before or after, or at the time of or after, the determination of the particular estate."

The remainder here at issue was limited on the death of Mary Pollack, an event which might have happened after the termination of her particular estate, for her estate might have been terminated before her death by the lawful expenditure by the trustee of the entire trust property for her support and maintenance, and in that event Joseph Pollack could have taken nothing. His right was therefore not vested, but contingent on the failure of the trustee so to expend the trust property before the death of Mary Pollack. He had no leviable or transferable interest or property in the trust property at the time he filed his petition in bankruptcy, or during the pendency of the bankruptcy proceedings, or at any time prior to the death of Mary Pollack.

Neither the petitioning creditors nor the trustee in bankruptcy can therefore now recover any right or interest therein, and the order of the court below should be reversed, and the case should be remanded, with directions to dismiss the petition of the creditors upon its merits.