# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3968

_____

Robert S. Bloemer, et al.          *
                                     *

        Plaintiff/Petitioner     *

                                     *   Appeal from the United States
         v.                       *   District Court for the District
                                     *   of Minnesota

                                     *

Northwest Airlines, Inc.       *

                                     *

        Defendant/Respondent.   *

                                     *

_____

Submitted: October 22, 2004
Filed: March 25, 2005

_____

Before LOKEN, Chief Judge, MAGILL, and BENTON, Circuit Judges

_____

BENTON, Circuit Judge.

In 1985, Republic Airlines, Inc., used assets from an union-negotiated, employer-funded retirement plan to purchase a group annuity contract from Prudential Mutual Insurance Company. In 1986, Republic was acquired by Northwest Airlines, Inc., which became the successor "Contract-Holder" of the annuity contract. In 2001, Prudential "demutualized," with Northwest receiving over 1.5 million shares of Prudential Financial, Inc., in exchange for membership interests. Twelve plaintiffs who are annuitants or beneficiaries under the annuity contract sued Northwest alleging they – not Northwest – were entitled to the shares, because the

funds of their retirement plan purchased the annuity contract that gave membership rights in Prudential.[1]

The district court[2] dismissed the suit for lack of subject matter jurisdiction, finding that the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*., required arbitration of ownership of the shares. Plaintiffs appeal. This court reviews de novo questions of subject matter jurisdiction. *See **Taggart v. Trans World Airlines, Inc.***, 40 F.3d 269, 272 (8th Cir. 1994). Appellate jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

First, plaintiffs argue that the district court misapplied *Jenisio v. Ozark Airlines, Inc. Retirement Plan*, 187 F.3d 970 (8th Cir. 1999), when it concluded the RLA preempted their claims.

In *Jenisio*, an employee sued for increased benefits under two pension plans. The district court dismissed based on RLA preemption; this court affirmed. *See **Jenisio***, 187 F.3d at 973. This court ruled that the RLA requires that pension disputes must be arbitrated if the pension plan is (1) itself a collective bargaining agreement ("CBA") or (2) maintained pursuant to a CBA. ***Id***. A plan is maintained pursuant to a CBA if it was "incorporated by reference in that CBA." ***Id***. However, incorporation by reference requires more than "mere mentioning" of the plan in the CBA. ***Id***.

---

[1] A separate grievance proceeding against Northwest's retention of the shares (and accumulated dividends) is pending under the 2002 collective bargaining agreement. Plaintiffs' motion to supplement the record (with a memorandum from that proceeding) is granted.

[2] The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

Plaintiffs contend that under the *Jenisio* test, the annuity contract here is not "maintained" pursuant to a CBA. To the contrary, a review of the record demonstrates that the CBAs in this case more than merely mention the pension plans and the resulting annuity contract: the CBAs create and terminate the retirement plans, and address the purchase of the annuity contract. The record shows:

### 1. Republic Airlines, Inc. Pilots Retirement Income Plan

Before the merger of Republic and Northwest, Republic and the Air Line Pilots Association ("ALPA") agreed to establish a Retirement Income Plan. The RIP was employer-funded, with retired pilots receiving a monthly retirement benefit. The original RIP provided: "If all liabilities of the plan to Participants and their beneficiaries have been satisfied, any residual assets of the plan shall be returned to the employers."

### 2. Letters of Agreement

On March 25, 1984, Republic and the ALPA agreed to terminate the RIP and provide benefits by purchase of a group annuity contract. Republic and the ALPA decided to create a new Defined Contribution Plan. On June 25, 1985, Republic and the ALPA agreed, after certain other payments, to fund the Defined Contribution Plan.

### 3. Section 8.11

The parties then promulgated an amended RIP, which included § 8.11:

> Certain Insurance Company Payments. Any dividends or similar credits payable by an insurance company that issues an annuity contract under the Plan shall be paid to the Fund . . . . Any such payments payable after the termination of the Plan shall instead be paid to the Republic Airlines, Inc. Defined Contribution Plan For Pilots. . . . If the Defined Contribution Plan is not in existence at the time of any such payments

are to be made, the payments shall be made for the benefit of Company Pilots as may be agreed by the Company and the Association.

Shortly after these amendments, Republic and the ALPA terminated the RIP, specifying that § 8.11 survived the termination. Republic then used assets from the defunct RIP to purchase the group annuity contract from Prudential, in order to guarantee payment of pension benefits.

4. The 1986 Settlement

After the RIP dissolved, the ALPA sued Republic attacking various aspects of the termination of the RIP, including the purchase of the annuity contract from Prudential. Republic and the ALPA settled the lawsuit. The settlement addressed any amounts Republic might receive from the Prudential group annuity contract:

> 3.  Any and all refunds, credits or other amounts received by Republic from the Prudential Insurance Company of America ("Prudential") after November 1, 1986 relating to annuity purchases by Republic for Republic's pilots in connection with the termination of the Republic Airlines, Inc. Pilots Retirement Income Plan shall be paid, within 21 days after receipt of the same, by Republic to the Republic Airlines Inc. Defined Contribution Pension Plan for Pilots . . . .

5. Retirement Plan Agreement

In 1989, Northwest and the ALPA, representing Northwest pilots and former Republic pilots, entered a Retirement Plan Agreement. It ended Northwest's obligations to contribute to the Defined Contribution Plan:

> 5.  Money Purchase Plan. With regard to the Republic Airlines, Inc. Defined Contribution Plan for Pilots (the "Money Purchase Plan"), the Employer and the Pilots agree that:

a.    Employer contributions under the Money Purchase Plan shall permanently terminate with the contribution due for the Plan year ending December 31, 1989.
. . . .

c.    The Employer [Northwest] shall take all steps which may be necessary or appropriate to cause the Money Purchase Plan to be liquidated and distributed to participants as soon as practicable . . . . Such distribution of account balances shall constitute a full and complete discharge of all of the Employer's collective bargaining obligations under the Money Purchase Plan.

6. Other CBAs in 1989, 1993, 1998

The parties reached CBAs in 1989, 1993, and 1998 – all before the demutualization in 2001 – each addressing pension issues. Each CBA also contains "zipper" clauses stating it supersedes any prior agreements (except those specifically listed).

The key inquiry is whether the plaintiffs' claims are preempted by the RLA. Preemption occurs if the claims are "inextricably intertwined with consideration of the terms of the labor contract" so as to require interpretation of the CBA. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). The RLA requires parties to arbitrate "minor" disputes. *See* **45 U.S.C. § 184**; *see also Gore v. Trans World Airlines*, 210 F.3d 944, 949 (8th Cir. 2000). Minor disputes are those "arising out of the application or interpretation of the collective bargaining agreement, and therefore, complete preemption applies to disputes involving duties and rights created or defined by the collective bargaining agreement." *Gore,* 210 F.3d at 949. There is a presumption that disputes are minor and thus arbitrable. *See Jenisio*, 187 F.3d at 973.

Plaintiffs allege state-law claims to the shares of stock resulting from demutualization. The RLA "does not pre-empt causes of action to enforce rights that are independent of the CBA." *Hawaiian Airlines Inc. v. Norris*, 512 U.S. 246, 257

(1994). As outlined above, plaintiffs' claims originate in rights and duties in the CBAs, which therefore must be interpreted. *See Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 n.2 (8th Cir. 2000). In this case, purely factual issues of conduct or motive will not resolve plaintiffs' claims. *See Hawaiian Airlines,* 512 U.S. at 261-62. State-law claims that depend on interpreting the CBA are preempted by the RLA. *See Jenisio*, 187 F.3d at 973. The district court did not misapply *Jenisio* in concluding that the RLA preempts plaintiffs' claims.

Second, plaintiffs allege that their rights to the shares vested on September 1, 1984, the effective date of the annuity contract. Plaintiffs reason that the court need not interpret the CBAs, because they cannot extinguish or diminish vested rights (without plaintiffs' consent). *See Allied Chem. & Alkali Workers of Am. v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n.20 (1971).

A vested right is an immediate fixed right of present or future enjoyment. *Pollack v. Meyer Bros. Drug Co.*, 233 F. 861, 868 (8th Cir. 1916). Rights vest when the right to enjoyment, present or prospective, becomes the property of some particular person as a present interest. *Id.*

Here, the stock did not exist until Prudential demutualized in 2001. There is no evidence that 17 years earlier when the annuity contract was negotiated and executed, the parties agreed who would receive stock resulting from a change-of-issuer of the annuity contract. The plaintiffs did not in 1984 have a fixed right of future enjoyment in the stock.

Plaintiffs assert that in 1984, they vested at least in the membership interests (later exchanged for the Prudential stock). Unfortunately, this assertion assumes the conclusion, that plaintiffs – not Northwest – owned the membership interests. The CBAs must be interpreted in order to determine who owned the membership interests,

which later became stock.  Conclusions as to vesting must await interpretation of CBAs.

Third, plaintiffs argue that the district court erred by denying any forum  to retired Republic pilots and spouses of deceased Republic pilots – all of whom were never employed by Northwest.

Plaintiffs are wrong.  Once applicable, RLA preemption includes suits by terminated and retired employees.  *See **Pa. R.R. Co. v. Day**,* 360 U.S. 548, 552 (1959). Once applicable, RLA  preemption extends to the spouses of deceased employees.  *See **Jenisio**,* 187 F.3d at 972 n.4.

The district court's dismissal for lack of subject matter jurisdiction is affirmed.